R. A. HALL ET AL. v. HARGADINE-McKITTRICK DRY GOODS COMPANY ET AL.

Decided March 7, 1900.

**1.  Evidence—Harmless Error.**

Admitting evidence of a statement by one defendant, though as to his codefendant it was hearsay only, or was not responsive to the interrogatory, was not ground for reversal, where the facts embraced in the statement were also proven by the testimony of the party making it, when sworn as a witness.

**2.  Evidence—Hearsay—Documents.**

On the question of the amount of a firm's indebtedness, matters disclosed by examination of the books of a bank or of claims against such firm in the hands of attorneys are not objectionable on the ground that they are hearsay.

**3.  Assignments of Error.**

Errors sought to be brought under review must be raised by assignments specifying the particular ruling complained of and advising the court of the issue intended to be made.

**4.  Conversion—Confusion of Goods—Damages.**

A merchant having transferred his stock of goods, his vendee refused to permit the parties from whom some of the goods were originally purchased, and who sought to recover them back by reason of fraudulent representations by the buyer, to have access to the stock for the purpose of identifying the goods they claimed. Held, that, establishing fraud and notice, such parties could recover as damages the entire value of the goods fraudulently purchased from them, though unable to show what part thereof had come into the hands of defendant by the transfer.

**5.  Jury—Right of Challenge—Codefendants.**

Where the several defendants unite in a common defense they are entitled, together, to only the number of peremptory challenges of jurors allowed to one defendant.

**6.  Charge—Referring Jury to Pleadings.**

After stating in the charge the material issues, it is not reversible error to refer the jury to the pleadings for a more extended statement.

**7.  Charge—Fraud—Right to Prefer Creditors.**

A charge as to a debtor's right to prefer creditors is inapplicable to a suit seeking to rescind, on account of such debtor's fraud, the sale of goods to him.

**8.  Same.**

A debtor has no right to secure, with goods fraudulently obtained from one creditor, his debt to another who has knowledge of the fraud.

**9.  Error—Who Can Complain.**

A defendant can not complain of a charge releasing from liability a codefendant whom he has guaranteed to save harmless.

APPEAL from Nacogdoches.  Tried below before Hon. TOM C. DAVIS.

*Ingraham, Ratcliff & Huston* and *J. Z. H. Scott,* for appellants.

*Blount & Garrison* and *E. C. Branch,* for appellees.

COLLARD, ASSOCIATE JUSTICE.—This is a suit to rescind sale of goods, and for their value, brought December 9, 1897, by appellee against the First National Bank of Nacogdoches, R. A. Hall, J. H. Cox, and S. Kaplan & Bro., a firm composed of S. Kaplan and Harry Kaplan, upon the ground that Hall, a merchant of Nacogdoches, bought the goods on the 13th of August, 1897, of plaintiff, of the value of $1492.44, in St. Louis, Mo., on credit, with the intention not to pay for them, and, as a basis of such credit, made a false statement in writing as to his assets and liabilities at the time of the purchase and sale, deceiving the plaintiffs into allowing him the credit and thus inducing plaintiffs to extend the credit; that Hall conveyed the goods to Cox as trustee, who sold them to the bank without valuable consideration, and that the bank conveyed them to Kaplan Bros.; that plaintiffs did not discover the fraud until December, 1897.

Defendants answered in one answer, making common defense, by general demurrer, general denial, and special denial that Hall bought the goods without the intention of paying for them, and denying fraud.

They alleged that during the year 1897 to December 1st, Hall did a general mercantile business in Nacogdoches, Texas, and on December 1, 1897, Hall conveyed his entire stock of goods to Cox to secure his indebtedness to the defendant bank, and the bank at once accepted, Hall owing the bank $5000; that the property was at once delivered to the trustee, and he took immediate possession; that if Hall bought any goods from plaintiffs, it was about August 1, 1897; that the goods were immediately put in Hall's stock and daily exposed for sale from August 1 to December 1, 1897, in his retail store, with full knowledge and consent of plaintiffs, until after plaintiffs' debt was due, and no steps were taken to rescind the sale until this suit was brought; that December 6, 1897, Cox sold part of the goods conveyed to him as trustee to the bank for $4200, leaving Hall still indebted to the bank about $800; and that before this suit was brought, the bank, December 7, 1897, sold the goods to S. Kaplan & Bro. for cash for $4372; that the invoices of sale to Kaplan & Bro. had to be corrected, thus deducting $200 of the amount paid by Kaplan & Bro.

The court directed the jury to return a verdict for defendants Cox and Kaplan & Bro., and instructed the jury as to liabilities of Hall and the bank.

The jury returned a verdict for plaintiffs against Hall and the bank for $1492.44, upon which judgment was rendered from which this appeal is taken.

*Findings of Fact.*—We find the facts as follows: Plaintiff, a corporation in St. Louis, Mo., sold the goods and merchandise to Hall, as alleged, by account on credit, which amount is verified December 2, 1897, before a notary public by affidavit of E. J. Glasgow, vice president and agent of the plaintiff, that the account is a true and correct account of the company with R. A. Hall, and that within the knowledge of affiant it is just and true; that it is due, and that all just and lawful credits, offsets, and payments have been allowed on the same; and stating the amount due as $1492.44. The account and affidavit attached were filed as an exhibit to the petition.

At the time the credit was extended, and to procure the same, defendant Hall made the following written statement to plaintiff:

"In case of failure or insolvency, chattel mortgage, judgments in vacation, or bills of sale, we retain the right to declare all accounts then due.

"CREDIT DEPARTMENT.

"Statement made this 12th day of August, 1897, to Hargadine-Mc-Kittrick Dry Goods Co., St. Louis, Mo., by R. A. Hall, of the firm of ——, City of Nacogdoches, County of ——, State of Texas, which

firm is composed of the following persons: No partners. Copartnership ——, unlimited and engaged in the business of ———.

| "Assets. | | Liabilities. | |
|---|---|---|---|
| "Cash value of stock in store | $5000 | For merchandise on open account, not due....... | $800 |
| "Insured for ............ | 2000 | For merchandise on open account, past due....... | 850 |
| "Amount of book accounts considered good ....... | 7000 | To H. McK. D. G. Co..... | 600 |
| "Amount of notes considered good ............ | —— | B. J. Wolf, N. Y......... | 80 |
| "Cash on hand and in bank | —— | S. & J. Katz............. | 180 |
| "Store building at value... | —— | Andis & Co.............. | —— |
| "Is it exempt?........... | —— | W. F. Taylor, 3 to......... | 500 |
| "Personal property (describe it) ............. | —— | Friedman Bros.. ......... | 350 |
| "Real estate, market value, name of person holding title. Home only; First National Bank. | | For merchandise by note or acceptance not due..... | —— |
| | | Borrowed money not secured | 1500 |
| | | Borrowed money secured. No. | |
| "Chattel mortgage upon what property? When due? No. | | | |

"Annual sales, $18,000.

"Homestead at value.

"In whose name? Mortgage on real estate, incumbrance on each piece, when due, and rates of interest? No.

"Amount of assets, $12,000.

"Amount of liabilities, $3150.

"Amount of assets over liabilities, $8850.

"Are you surety on notes or bonds? No. Other debts not included in above? No. Does the above statement show all your debts and liabilities of every kind and nature whatsoever? Yes. Amount of liabilities, $3150.

"The above is a true and accurate statement of my assets and liabilities, which I make for the purpose of obtaining credit from Hargadine-McKittrick Dry Goods Co., and the same shall stand good as to all subsequent purchases, unless, at the time of said subsequent purchase or purchases, I shall notify them of any change in my assets or liabilities, and I hereby bind myself to give such notice in case of any material change in my pecuniary condition.

"Sign here full name of firm:    R. A. Hall,

"By whom signed:    A Member of the Firm.

"Terms: Cash November 1 and December 1.    C. C. Collins,

"Exhibit A.    Notary Public."

"3/14, 1898."

The credit was extended by plaintiff upon faith of the statement, plaintiffs relying upon it, and they were so induced. The verdict, upon sufficient facts proven, ascertains the fact, and it is true, that the statement made was materially false and fraudulent, and that Hall, who made the statement, had full opportunity to know that it was false and ought to have known the fact. He is chargeable with notice of the falsity of the statement. This suit was brought immediately upon discovering the falsity of the statement by plaintiffs, and upon discovery of facts that put them upon notice of its falsity.

It was proved that the amount due by Hall to plaintiffs for goods sold was $1492.44, as per itemized statement in Exhibit "A" attached to depositions of witness Glasgow, which is an exact copy of exhibit attached to the petition.

December 1, 1897, R. A. Hall executed to John H. Cox, trustee, a deed of trust, conveying Hall's entire stock of merchandise in his store in Nacogdoches, "consisting of all kinds of merchandise, groceries, hardware on hand, fixtures, notes and book accounts, and any cotton on hand," to secure Hall's debt to the First National Bank, stated to be $4000, with authority to sell property according to trustee's discretion to pay expenses of trust and debt of bank. Acknowledged and filed for record in Nacogdoches County on the day of its execution, December 1, 1897.

Cox, trustee, by bill of sale, sold the stock of goods to the bank for $4169.98, being 65 per cent of the inventoried value, dated December 6, 1897, acknowledged and recorded same day. The bank conveyed the stock of goods to S. Kaplan & Bro., December 8, 1897, for $4491.50, paid by his check on other parties. The bank credited the amount of its purchase on a pre-existing debt of Hall to it, secured by the deed of trust, still leaving Hall in its debt several hundred dollars.

Nelson M. Moody, fully authorized to represent plaintiffs, was in Nacogdoches about December 1, 1897, on account of the failure of Hall in business; was there between the 8th and the 12th of December two or three days, to protect plaintiffs' interest in the failure, and left there on the 10th or 11th of December, and he testified as follows, and we find his testimony to be true:

"I went with Mr. Garrison to Hall's place of business; found Mr. Kaplan and an officer of the bank standing in front of the store. Mr. Harrison, our attorney, made demand upon these parties for the goods, which he stated we were there to identify, and had the bills with us to pick them out from, and asked that we be allowed to do so, which demand or request was very promptly denied by the officer of the bank and Mr. Kaplan. I afterwards saw Mr. Kaplan alone, and he told me that he had bought the goods from the bank and had given his check for them, but the bank had not paid for them, and he would stop payment on it, as he did not want to have any trouble in the matter; and he told me the bank had guaranteed him against loss, and that he had allowed the check paid. I also learned from Mr. Kaplan that the sale

to him was made after night. 1 have no way of placing the exact date in my mind, but it was early in the morning, probably between 8 and 9 o'clock, on the day after the night of the sale to Mr. Kaplan. We would have made demand of Mr. Cox, the trustee, at the same time, but he was in the store and we coud not get in. * * * I only know what Mr. Kaplan stated to me, with regard to having purchased the stock, giving his check for it, and afterwards concluding to stop the payment of the check, and his statement that they had given him a guarantee protecting him, so that he allowed the sale to stand and the check paid, and also that he bought this stock the night before this conversation. * * * I went to the store on two or three different occasions, but was never admitted, and at last went with Mr. Garrison to make the demand. I was denied admission, and I could not tell how many goods we had in there. Mr. Davidson, of the First National Bank, took me into the bank and had one of the officers to show me Mr. Hall's notes to them, and the book disclosed an indebtedness at the time the statement was made to me, August 12, 1897, to be over $3000, and that at one time that fall Hall had owed them in the neighborhood of $11,000; also found claims there in Nacogdoches, in the hands of attorneys, for debts contracted prior to August 12, 1897, amounting to considerably in excess of the amount stated to me of his entire indebtedness."

S. Kaplan testified truly, and we find the facts as stated by him as follows: He had bought the goods and paid for them by check on A. Wettermark & Son. "I went to Ratcliff (of the bank) and made him an offer, and told him if he accepted to let me know, and the offer was accepted next day, and he gave me a bill of sale to it (the stock) and I gave him the check on A. Wettermark & Son. Before the check was paid I was notified by some parties that they were claiming the goods. Mr. Garrison came to me and said: 'I understand you have bought the Hall stock, and there will be some litigation over it.' I told him I had already paid for the goods. After he told me this, I notified the bank not to pay the check until I could understand the matter further. I afterwards ordered the check paid. After I ordered it paid, I went to the First National Bank and asked them about it, and Ratcliff says: "They are your goods; go ahead and take them,' and if there was any lawsuit, they would stand by me. I would look to them to hold me harmless, if anything went wrong, or suit was brought. This was the agreement I had with them. * * * I bought the goods about nine or ten o'clock in the morning. * * * I gave the check to Mr. Ratcliff (of the bank) some time in the morning. I gave it to him before Mr. Garrison and Moody met us. His coming to see me was the cause of my going to Wettermark and stopping payment of the check. My recollection is that Judge Ratcliff came to me and told me that if I did not pay it he would instantly protest it."

It was not shown what particular goods, or how much of plaintiffs' goods were conveyed by Hall to the trustee, by the trustee to the bank, nor by the bank to Kaplan, the parties in possession, the bank acting

with them, having refused, as stated, to allow plaintiffs to view the stock and select their goods out of the stock sold.

*Opinion.*—The first assignment of error relied on by the appellant is that "the court erred in not sustaining the defendants' written motion to strike out the answers of A. L. Moody, presented before announcement of ready for trial, being his answers to interrogatories 7, 11, 15, and 13, and the amount of R. A. Hall's debt to plaintiffs."

The ground of objection is more distinctly stated in a proposition, that propositions between third parties, when defendants are not present, are hearsay and not evidence, and answers not responsive to questions ought to be stricken out.

Plaintiffs' interrogatories to Moody, asked him, are: "Question 7: Please state to what extent if any plaintiff relied on the statement or memorandum (meaning statement of R. A. Hall in writing) about which you have been testifying, in extending credit to said defendant Hall and making shipment of goods as you have heretofore testified." Answer: "I represented the Hargadine-McKittrick Dry Goods Company in this transaction, taking the statement for them and making the credit for them, and had full power to make the statement or decline it. I relied fully upon this statement made to me by Mr. Hall, and was strengthened in my belief that Mr. Hall was all right by the fact that he came in with Mr. John P. Davidson, the banker at Nacogdoches, whom I knew to be good, and who stated to me that they were buying together, and were discounters." Then this witness testifies: "I afterwards saw Mr. Kaplan alone, and he told me that he had bought the goods from the bank, and he had given his check for them, but that it had not been paid, and he would stop the payment on it, as he did not want to have any trouble in the matter. I saw him again after this and he told me that the bank had guaranteed him against loss and he allowed the check to be paid. I also learned from Mr. Kaplan that the sale was made to him after night. I can not remember the exact hour, and said witness testified he would have made a demand on Cox as trustee, but he was in the store and could not get in. No one was present but S. Kaplan." Question 13: "Tell everything you know about the deed in trust from R. A. Hall to John Cox, the sale of the Hall stock of goods to the First National Bank, the sale of said property to S. Kaplan & Bro. Have you done so? If not, why not? Were you present when either transaction took place? If so give the dates and time of day, and be particular and state fully." Answer: "I know nothing about the deed of trust from R. A. Hall to John H. Cox, trustee, of my own personal knowledge, as I never saw the document or a copy of it. I know nothing about the sale from Cox, trustee, to the bank, of my own personal knowledge. As I have stated before, I went with Mr. Garrison, our attorney in this matter, to Mr. Kaplan, on the morning after he had bought the goods from the First National Bank, to demand our goods. Mr. Kaplan told me that he would have

the check stopped, as he did not want any trouble. He went over to the bank for that purpose, and upon his return told me that the bank had guaranteed him against loss, so he had let the check go through. I was not present when any of the sales were made, and I have given my testimony as full as I can remember. I only know that Mr. Kaplan stated to me with regard to having purchased the stock, giving his check for it, and afterwards concluding to stop the payment of the check, and this statement that they had given him a guarantee protecting him, so he allowed the sale to stand and the check to be paid; also that he bought the stock the night before this conversation."

Kaplan was a party defendant to the suit, and his statements made to Moody would not be hearsay as to him. His statements to Moody would be evidence against him. His statement to Moody about stopping payment of his check at the bank was shown by his own testimony to be true, and it was not a mooted question nor denied. Hence his statement to Moody, if technically not legitimate, as hearsay, was harmless, the facts of the statement being true, as proved by his own testimony.

Appellants next insist as follows: The court erred in admitting question No. 6 of plaintiff's witness.

For proposition, appellants say same as in number 1. The question referred to is: "Did you make any inquiry or investigation as to assets and liabilities of defendant Hall, while at Nacogdoches? If so please state the extent and result of your investigation." Answer: "Mr. Davidson of the First National Bank took me into the bank and had one of the officers show me Mr. Hall's notes to them and the books, which disclosed an indebtedness at the time the statement was made to me, August 12, of over $3000, and that at one time that fall, Hall had owed them in the neighborhood of $11,000. Also found claims in the hands of attorneys for debts contracted prior to August 12, 1897, amounting to considerable in excess of the amount he stated to me as his entire indebtedness."

The objections made to the ruling of the court by the assignment are not definite, and the assignment does not refer to any bill of exceptions which would make the objection definite or inform us what the objection was. The brief does not inform us, and we are not required to formulate the objection intended. If the objection is that the matter is hearsay, it is not well taken. The matter disclosed was found in the bank's books and claims in the hands of attorneys which exhibited debts of Hall. No error is pointed out and we find none.

It is next insisted that the court erred in admitting conversation between S. Kaplan and John T. Garrison, none of the other defendants being present, and their acts and conversations were hearsay as to the other defendants, and especially so when the court instructed a verdict for the witness Kaplan.

Garrison testified: "On the morning of December 8, 1897, he had heard that S. Kaplan & Bro. had purchased the Hall stock of goods

from the First National Bank, and that he went and found S. Kaplan and asked him about it, and Kaplan told him that he had bought the goods and given the bank his check for them; that he told Kaplan that plaintiff was claiming the goods, and that he had better go and stop the payment of the check, and that Kaplan said he would do so, or see about it, and that Kaplan went off and was gone about an hour and came back into his (Garrison's) office and told him to go ahead; that the bank had guaranteed to hold him harmless in the matter.

We have already overruled an assignment of error presenting practically the same matter as this, and we make the same disposition of it. As before stated, what Kaplan stated to Garrison was the truth, proved by Kaplan's uncontradicted testimony, and the admission of the statement was harmless.

We have already considered and overruled the matter of the next assignment of error, number 4.

The next matter presented in appellant's brief is that the court erred in admitting evidence of matters that transpired in Nacogdoches December 1, 1897, for the purpose of proving Hall committed a fraud in St. Louis, Mo., in August, 1897, and erred in admitting testimony of matters that occurred in Nacogdoches after December 1, 1897, to show notice and participation in a fraud committed in August, 1897, by R. A. Hall, and then leaving out of its charge the question and not in any manner controlling such testimony in its charge. The brief numbers the above as assignment number 5, but refers to assignments numbers 11 and 12. The record shows that assignment number 5 relates to the refusal of the court to give a special charge. The matter referred to in the brief, called assignment of error number 5, seems to be contained in assignments numbers 11 and 12. Under the rules, the objections ought not to be considered, as assignment number 5 does not raise the question attempted to be brought under review, but referring to assignments numbers 11 and 12, we must say that no error is presented. No particular ruling of the court is specified, and no particular testimony referred to nor bill of exceptions, if any, were reserved. We are not advised of the issue intended to be made.

The assignment number 18 is to the effect that the verdict is excessive and contrary to the evidence, being for the invoice price of the goods August 12, 1897, the goods having been exposed for sale from August 12th to December, 1897.

Plaintiffs' agent applied at the store where Kaplan had the goods sold to him by the bank, to select his goods or such of them as were there from the stock; he was refused admission to the store by the bank officer present and by S. Kaplan, and was not allowed to see the goods for the purpose desired; the bank acting, by its officer present with Kaplan, in the refusal. In such case he could recover of the parties the value of the goods sold to Hall. Morrison v. Adoue & Lobit, 76 Texas, 255.

In the case cited, the court decides several questions that arise in the

case at bar. It is said that, "It is well settled that a seller who is induced to sell by a false statement of material facts made by the buyer is entitled to avoid the sale, in all cases in which the false statement is made with knowledge of the falsity by the person making it." Id., 260, 261. "A false statement made by a buyer who has full opportunity to know whether it is true or not, in reference to a material fact, although it may not be actually known by him to be false, also furnishes ground for avoiding the sale, if it be made when he has no reason to believe it to be true.

"In the case before us, it is shown that the person who made the representations which induced appellants to sell was an active partner in the purchasing firm, and that by the use of means within his reach he could and ought to have known that his statements were not substantially true. A person so situated ought not to be heard to say that he does not know what his firm owns and owes. He must be held to have made a statement as to assets and liabilities of his firm known by him to be untrue, or to have made the statement recklessly, without making that inquiry which good faith required he should make before making a statement intended to influence, and which he knew would influence the sellers. In either case, appellants were entitled to avoid the sale so long as the goods sold were in the hands of the purchasing firm, or in the hands of any person not a bona fide purchaser.

"Appellees having purchased solely in payment of a pre-existing debt, can not claim to be such purchaser, although they may have known nothing of the untrue statement which induced the appellants to sell."

It is also held in the same case, that when demand is made by the seller for the goods, it then became the duty of the person in possession to ascertain what of the goods were then in the stock that had been originally sold. "It seems to us," the court say, "that it then became their duty to ascertain that fact, and if they failed to do so and sold the goods to other persons, thereby depriving appellants of the power to show what goods came into their hands, then they ought to be held liable for the value of the goods sold by appellants to Nordholtz & Co.," the original purchasers. "The burden of proof ought to rest on appellees to show what goods they received; and, as the case now appears from the record, if they failed to do this, judgment ought to be rendered against them for the face value of the goods sold to their vendors by appellant."

Very much of the foregoing opinion by Chief Justice Stayton is applicable to the facts of the case before us, and we need not reiterate it in ruling upon the assignments of error in this case. The plaintiff had the right to rescind the sale and recover the goods, such of them as could be identified, and the bank and Kaplan having refused to allow plaintiffs' agent to view the stock and select its goods, the plaintiffs then had the right to recover the value of all their goods originally sold, in the absence of proof that all the goods were not in the stock sold to the bank and to Kaplan. The burden of proof was upon them to show what

goods of plaintiffs were in the stock and included in the sale, and, having failed to make the proof, it was proper to make them liable for all the goods plaintiffs sold to Hall.

The court's charge presented the law governing the rights of the parties, as laid down in the opinion of Chief Justice Stayton, in the case above cited, and no valid objection can be urged against it.

We find no error in the action of the court below in allowing defendants but six peremptory challenges. There was no distinct defense made by the several defendants; they all made one common defense, and they must be held to be but one party, in which case the statute allows but six peremptory challenges. Rev. Stats., art. 3212; Raby v. Frank, 34 S. W. Rep., 777; Jones v. Ford, 60 Texas, 127; Wolf v. Perryman, 82 Texas, 112; Hargrave v. Vaughn, 82 Texas, 347.

We believe the charge of the court stated the material issues between the parties as evolved from the pleadings, and there was no reversible error in referring the jury to the pleadings for a more extended statement of the issues.

The charge requested by defendants and refused by the court, declaring the right of a debtor to prefer his creditors, was not applicable to the issues of the case, and it was not error to refuse it.

A charge asked by defendants and refused by the court is the subject of the seventeenth assignment of error. The charge requested contains an erroneous proposition as to respective rights of defendants, and it is this: "A defendant knowing Hall had committed a fraud, would not prevent such defendant from collecting or receiving his debt, Hall having the right to secure any of his creditors."

He had no right to secure a debt to a creditor who had knowledge of the fraud, with the goods of plaintiffs.

There was no injury to the bank or to Hall in the instruction of the court to find for defendants Kaplan & Bro. and Cox, as the bank agreed to hold Kaplan harmless, and it stood between Kaplan and his liability. Cox was only a trustee, and as such sold the goods to the bank to pay a part of his debt against Hall. Appellee is satisfied with its judgment and does not complain. The bank sold the goods to Kaplan and received payment therefor, and, under the facts, would be liable over to him in case judgment had gone against him.

We find no reversible error in any assignment presented, and having considered all of them and overruled them, the judgment of the lower court is affirmed.

*Affirmed.*

Writ of error refused.