## MISSOURI STATE LIFE INS. CO. v. DOSSETT. (No. 52.)*

(Court of Civil Appeals of Texas. Waco. May 22, 1924. Rehearing Denied Oct. 16, 1924.)

1. **Insurance** ⊙⟿646(1½)—**Insurer has burden, under statute, of proving falsity and materiality of representations; "misrepresentation"; "material fact."**

Under Rev. St. arts. 4741, 4953, 4959, insurance companies have burden of proving not only that representations of insured are false, but of establishing materiality thereof; misrepresentation being statement by assured of something as fact which is untrue and has tendency to mislead; "material fact" being one which would induce company to decline insurance altogether, or not to accept it except at higher premium.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Material Fact; Misrepresentation.]

2. **Insurance** ⊙⟿389(1)—**Applicant owes duty to honestly answer questions, though insurer with knowledge of false answers may not assert falsity as bar to recovery.**

Applicant for insurance owes duty to fully, fairly, and honestly answer questions, though, where insurer is aware that answers made are false, it cannot, after issuing policy and accepting premiums, plead such falsity as defense or bar to recovery.

---

**3. Insurance ⬅═253—Where facts specifically inquired about, full disclosure must be made, and insurer has right to rely on answer.**

Where fact is specifically inquired about, or question to applicant is so framed as to elicit desired fact, a full disclosure must be made, and insurer has right to rely on answer.

**4. Insurance ⬅═377(2)—Knowledge of falsity of some statements by applicant does not estop insurer from avoiding policy.**

Applicant will not be heard to say that, because insurer knew part of his answers were untrue, it was charged with knowledge that all might be untrue, and to estop company from avoiding policy by reason of its knowledge of falsity and misrepresentations by applicant; it is insufficient that it had knowledge of falsity of some only of said facts.

**5. Insurance ⬅═371—Where answer apparently covers all facts and prevents further investigation, insurer not estopped to plead incompleteness.**

Where applicant's answer to question apparently embraces all facts and prevents further investigation, insurer is not estopped to plead incompleteness of his answers.

**6. Estoppel ⬅═52 — Intent and knowledge of right essential to "waiver."**

Waiver is intentional relinquishment of known right and requires both knowledge of right and intention to release.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Waiver.]

**7. Insurance ⬅═256(1)—Material false representations avoid policy, unless specifically known to be untrue by insurer.**

Falsity of material statements avoids policy, unless insurer knew those identical statements were untrue.

**8. Insurance ⬅═668(6)—Where doubt as to materiality of representations exists, it is question for jury; otherwise, for courts.**

Where doubt exists as to materiality of statements, question is for jury, though, where reasonable minds could not differ, it is duty of court to render judgment accordingly.

**9. Insurance ⬅═291(1), 300—Questions as to previous applications for insurance and as to applicant's health held material.**

Questions as to whether applicant had been previously denied insurance and as to his present health *held* as matter of law material.

**10. Insurance ⬅═388(3)—Insurer's investigation is not waiver of falsity of statements made by applicant.**

Insurance company, by making private investigation, does not waive falsity of statements made by applicant.

**11. Insurance ⬅═291(1), 300 — False statements as to prior applications, present health, and physical examinations held to vitiate policy and warrant rescission.**

False statement that applicant had never been denied a policy applied for nor offered a substandard policy, and false statements as to present health and recent examinations by physicians, *held* sufficient to vitiate the policy and entitle insurer to a rescission.

Appeal from District Court, McLennan County; James P. Alexander, Judge.

Two actions, one by the Missouri State Life Insurance Company against Mrs. Jennie D. B. Dossett, the other by Mrs. Jennie D. B. Dossett against the Missouri State Life Insurance Company, consolidated and tried together. From a judgment against the insurance company, it appeals. Judgment of trial court set aside, and judgment rendered for insurance company.

Williams, Williams, McClellan & Lincoln, of Waco, for appellant.

Sleeper, Boynton & Kendall, and J. D. Williamson, all of Waco, for appellee.

BARCUS, J. On February 26, 1921, appellant, Missouri State Life Insurance Company, issued its two policies of life insurance on the life of A. J. Dossett, one being for $10,000, and the other for $15,000, payable to appellee as beneficiary. On December 31, 1921, A. J. Dossett died. On January 18, 1922, appellant filed suit in the 19th district court of McLennan county against Mrs. Dossett as beneficiary to cancel the policies, and tendered the amount of the premiums paid, together with 6 per cent. interest thereon from the time of payment; alleging as ground for canceling the policies that certain false and fraudulent statements were made by A. J. Dossett in his application for the insurance, which will be more fully stated hereafter.

On June 13, 1922, appellee as beneficiary filed suit in the 19th district court against appellant to recover the face of said policies, together with penalty, interest, and attorney's fees. The two suits were by the court consolidated and tried under the number and style of the suit brought by appellee. The consolidated causes were tried before a jury, which resulted in a judgment being rendered in favor of the appellee for the full face of said policies, with 12 per cent. penalty, 6 per cent. interest, and 4,000 attorney's fees.

The record in this cause is very voluminous and a number of assignments of error are presented. From our view of the case, it will not be necessary to pass in detail on the various assignments of error as presented by appellant.

The insurance policies sued on are what are commonly known as standard 20-year pay policies, with the clause contained therein that they are incontestable after one year, except for the failure to pay the premium. No question was raised about the policies having been issued, or the proof of death of the insured, or the demand on appellant for payment.

Appellant contends that the policies are

⬅═For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

void and unenforceable because of certain false and fraudulent answers made, and information concealed by A. J. Dossett in the answers contained in his applications for the insurance, with reference to the following questions:

"No. 16. I have never been declined nor postponed for insurance nor offered a policy different than that for which I made application, except ———"

The answer to the above was left blank, and was filled in by the home office of the insurance company to read, "None." Mr. Dossett was notified before the policy was delivered that the answer to said question had been so filled in, and he accepted his policy, which contained the application with said answer:

"No. 2 (b). Has any life insurance organization ever declined or failed to issue a policy on your life, or offered one different than applied for?" Answer. "Bankers' Life, 1910."

"No. 5. Detail all illnesses, diseases, operations, accidents, or injuries you have had since childhood (giving clinical history below)." Answer: "None."

"No. 6 (d). Has any physician ever expressed an opinion that your urine contained sugar or albumen, or casts? (Give full details)"—to which he answered, "No."

"No. 8. Are you now in good health? If not, what is the cause?"—to which he answered, "Yes."

The applications which A. J. Dossett signed stated that the answers contained therein were full, complete, and true. The testimony with reference to the facts, in so far as they involve the above questions and answers thereto, is undisputed. It was an established fact that the Bankers' Life Insurance Company, in 1910, rejected Mr. Dossett's application for insurance; that the State Mutual of Rome, Ga., in about 1910, rejected his application; that the Reliance Life Insurance Company, about 1911, rejected his application; the Southland Life Insurance Company, about 1914, rejected his application; the Kansas City Life Insurance Company, about 1910 or 1911, rejected his application; the Amicable Life Insurance Company, about February, 1920, refused him life insurance; and the New York Life Insurance Company, in 1916, gave him a substandard policy on his application for a regular policy.

The evidence shows that the answer he made to the medical examiner in answering question No. 2 (b) above did not state all the facts, in that he had been examined by all of the companies named above and rejected by all of them, except the New York Life, which had issued him a substandard policy. It was established beyond controversy that his answer to question 6 (d) above was untrue, in that Dr. Graves and Dr. Thompson of Galveston, in 1911, told Mr. Dossett that

he had albumen and casts in his urine and advised him to, and Mr. Dossett did, change his business by reason thereof. Mr. Dossett told Dr. Sapp of Cameron and Dr. Scott of Temple of said examination. In 1913 Dr. Graves advised Mr. Dossett that his urine showed casts. In 1914 the Southland Life Insurance Company rejected Mr. Dossett's application because of casts in his urine, and Mr. Dossett was advised of said fact. In April, 1917, Dr. Scott made an examination of Mr. Dossett's urine and told him that it contained casts. On May 11, 1920, Dr. Van Tobei of Temple informed Mr. Dossett that he had casts in his urine. In December, 1919, and January and February, 1920, Dr. Brumby made four urinalyses of Mr. Dossett's urine and each time found casts and albumen, and so informed Mr. Dossett. The last one was made in the presence of Mr. Dossett, and he was told that by reason of casts and albumen in his urine he could not get insurance. In February, 1920, Dr. Longmire of Temple examined Mr. Dossett's urine and advised him that it contained casts.

With reference to his answer to question No. 8 above that he was in good health at the time the application was made, all of the testimony shows that the statements by doctors who had examined his urine were known to Mr. Dossett. Dr. Witte had treated Mr. Dossett in November, 1918, for physical illness, and at that time told him he had renal colic and advised him to go to the sanitarium at once for an examination, which he did, and the X-ray examination at Temple did not reveal anything seriously wrong with his condition. Again, in the fall of 1919, Dr. Witte attended Mr. Dossett professionally when he had a cold, which the doctor called a mild attack of the "grippe" or "flu." Mr. Dossett was examined at four different times by Dr. Brumby and Dr. Davis of the Amicable Life Insurance Company in December, 1919, and January and February, 1920, and was informed on each of said examinations that he had either albumen or casts in his urine. In February, 1920, he had a thorough examination made in the Scott Sanitarium at Temple, including an X-ray examination, and was informed at that time that his urine contained albumen and casts. At the close of the testimony appellant requested a peremptory instruction, which was refused, and to which it excepted and has assigned error, and we sustain said assignment.

The appellee does not controvert the above facts, but contends that the answers made were not material, and were not willfully and knowingly made, and that the appellant knew the real facts when the policies were issued, and knew the answers as made by Mr. Dossett were not complete and full; that if it did not know all the facts, by the use of the information it had, it could have,

if it desired, learned the real facts. In support of said contention, it is shown by the record that, at the time appellant issued the policies in question, it knew that the Bankers' Life Insurance Company, in 1910, had rejected Mr. Dossett for life insurance by reason of albumen and casts having been found in his urine.

There is some testimony that appellant also knew that another company, the name not being disclosed, in 1910, had rejected him, and the testimony shows that appellant knew that Mr. Dossett had been rejected by some company in 1915 for the same reason; the name of the company not being disclosed. This information was obtained from what in insurance circles is known as the Medical Impairment Bureau, the American Life Convention, and the Retail Credit Company; appellant having a card and a report from each of said organizations containing said information. Said cards, in connection with that information, revealed the fact that in June, 1916, and in December, 1920, Mr. Dossett was examined by different companies for insurance, and his urine did not at said time show either albumen or casts. By reason of the amount of the insurance applied for, and the fact that Mr. Dossett had been rejected in 1911 and 1915 by insurance companies because albumen and casts were found, appellant, before it issued the policies, required two specimens of Mr. Dossett's urine to be sent to the home office for examination, and said examination did not show any trace of albumen or casts.

Under the law in Texas, insurance companies are required to write into their policies the clause that same will be incontestable after the expiration of not more than two years from the date of issuance, except for nonpayment of the premiums, and that all statements made by the insured shall, in the absence of fraud, be deemed representations and not warranties, and that no statement contained in the application shall avoid the policy, unless it is fraudulent or material to the risk. Articles 4741, 4953, 4959.

[1] The burden is placed upon the insurance companies to prove, not only that the representations are false, but to establish the materiality thereof. Southern Surety Co. v. Butler (Tex Civ. App.) 247 S. W. 611. A misrepresentation to obtain insurance is a statement made by the assured of something as a fact which is untrue, and which had a tendency to mislead the company 3 Joyce on Insurance, par. 1884. A fact is material to the insurance risk, which would induce the insurance company to decline the insurance altogether, or not to accept it, unless at a higher premium. St. Paul Fire & Marine Ins. Co. v. Huff (Tex. Civ. App.) 172 S. W. 755; Indiana & Ohio Livestock Ins. Co. v. Smith (Tex. Civ. App.) 157 S. W. 755; United Benevolent Ass'n v. Baker (Tex.

Civ. App.) 141 S. W. 541, Supreme Ruling of Fraternal Mystic Circle v. Hansen (Tex. Civ. App.) 153 S. W. 351. Good faith is required on the part of both the insurance company and the insured.

[2] If the insurance company is aware of the fact that the answers made by the applicant for insurance are false, it cannot, if it issues the policy and accepts the premium, plead the falsity of said statements as a defense or bar to recovery. Sun Life Ins. Co. v. Phillips (Tex. Civ. App.) 70 S. W. 603; Mutual Life Ins. Co. v. Nichols (Tex. Civ. App.) 24 S. W. 910. On the other hand, it is the duty of the applicant for insurance to make a full, fair, faithful, and honest answer to all questions that are propounded to him by the insurance company. If the assured makes an answer to a question, he should make a full and complete answer. Cable v. United States Life Ins. Co., 111 Fed. 19, 49 C. C. A. 216; 3 Joyce on Insurance, pars. 1889, 1894, 1895; 3 Cooley on Briefs of Insurance, p. 2007.

[3] Where the fact is specifically inquired about, or where the question is so framed as to elicit the fact desired, there must be a full disclosure, and the company has a right to rely on the answers. 3 Joyce on Insurance, par. 1914; 3 Cooley on Briefs of Insurance, p. 2009; U. S. Gypsum Co. v. Shields (Tex. Civ. App.) 106 S. W. 725. The test of materiality is: Did the misrepresentation induce the insurer to accept the risk? 3 Joyce on Insurance, par. 1892.

[4, 5] In order to estop the insurance company from avoiding the policies by reason of its knowledge of the falsity and misrepresentation of the statements made by the applicant, it is not sufficient that it had knowledge of the falsity of some of said facts. Where a party makes a statement that apparently embraces all of the facts and thereby prevents a further investigation, he cannot claim that the company is estopped to plead the incompleteness of his answers.

[6] A waiver is the intentional relinquishment of a known right, and there must be both knowledge of the existence of the right and the intention to release it. Brotherhood of R. R. Trainmen v Roberts, 48 Tex. Civ. App. 325, 107 S. W. 626; United States Ins. Co. v. Moriarty (Tex. Civ. App.) 36 S. W. 943; Kansas City Life Ins. Co. v. Blackstone (Tex. Civ. App) 143 S. W. 702; Hoxie v. Home Ins. Co., 32 Conn. 21, 85 Am. Dec. 243; 25 Cyc. p. 865; 3 Cooley on Insurance, p. 2467; Moore v. Beakley (Tex. Com. App.) 215 S. W 957; Buchanan v. Burnett, 102 Tex. 492, 119 S. W. 1141, 132 Am. St. Rep. 900.

[7] Unless the applicant reveals all the material facts about which he is asked, it does not lie in his mouth to say that, because the company knew part of his answers were untrue, it was charged with notice that all of his answers might be untrue. If the appli-

cant makes statements that are material, which are untrue, it will avoid the policy, unless the company knew that those identical statements were untrue. 3 Cooley, p. 2001; Knights of Pythias v Rosenfeld, 92 Tenn. 508, 22 S. W. 204. Where the questions asked are admittedly material to the risk, and a false answer is given, the courts uniformly hold that a policy is unenforceable and cannot be collected. Indiana & Ohio Livestock Ins. Co. v. Smith (Tex. Civ. App.) 157 S. W. 755; State Mutual Life Ins. Co. v. Rosenberry (Tex. Com. App.) 213 S. W. 242; American Nat. Ins. Co. v. Anderson (Tex. Civ. App.) 179 S. W. 66, Wright v. Federal Life Insurance Co. (Tex. Com. App.) 248 S. W. '325; Fidelity Mutual Life Ins. Co. v. Harris, 94 Tex. 25, 57 S. W. 635, 86 Am. St. Rep. 813; United Benevolent Ass'n v. Baker (Tex. Civ App.) 141 S. W. 541; Mutual Life Ins. Co. 'v. Hilton-Green, 241 U. S. 613, 36 Sup. Ct. 676, 60 L. Ed. 1202; 3 Joyce on Insurance, Pars. 1896, 1897, 1912, 1916, 1924; Mutual Life Ins. Co. v. Crenshaw (Tex. Civ. App.) 116 S. W. 375; Hall v. Hargadine, McKittrick Dry Goods Co., 23 Tex. Civ. App. 149, 55 S. W. 747.

[8] If there is any question or doubt about the false statements or representations being material, it then becomes a question of fact to be passed on by the trial court or jury. Where the evidence is such that reasonable minds could not differ, it is the duty of the trial court, as well as the duty of this court, to render such judgment as the evidence requires. Where the questions asked in an application for life insurance policy are unquestionably material, and the answers are admittedly untrue, it is the duty of the court to render a judgment for the insurance company. Radley v. Knepfly, 104 Tex. 130, 135 S. W. 111, Freeman v. Huffman (Tex. Com. App.) 206 S. W. 819; Haass v. G., H. & S. A. Ry Co., 24 Tex. Civ. App. 135, 57 S. W. 855.

It is unquestionably true in this case that Mr. Dossett had been rejected by a number of life insurance companies, ranging from 1910 down to February, 1920, and that said applications for insurance had been rejected because of the fact that albumen and casts had been found in his urine. He had been told time and again by some of the most eminent physicians in Texas that both albumen and casts had been found in his urine, and within less than a year prior to the time the applications for insurance in this case were made, a half dozen or more examinations of his urine had been made, and at least four different examinations revealed the fact that it contained albumen and casts, and he was so informed. He was rejected as an insurance risk by the Amicable Life Insurance Company less than a year before the applications were made to appellant. Mr. Dossett had suffered an attack of colic, which his physician told him was renal colic, in No-

vember, 1918, and he had had two different urinalysis examinations of his urine by different physicians within two years before the applications to appellant were made. The evidence shows that Mr. Dossett was a man of large financial resources, and was an experienced business man, and it is inconceivable that he could, by inadvertence by reason of forgetfulness, have overlooked or failed to make a full statement with reference to the rejections that he had had for life insurance, and with reference to the number of times he had been told that he had albumen and casts in his urine, and with reference to the treatments and examinations he had had from different physicians.

[9, 10] We think it is unquestionably true that the questions asked were, as a matter of law, material to the risk. Mr. Dossett himself had been informed that rejections by one company would likely cause rejections by others. He himself had been told, less than a year before the applications in this case were made, by Dr. Brumby of the Amicable Life Insurance Company that the frequent appearance of albumen and casts in the urine was cause for rejection. Where an applicant for insurance has been rejected time and again over a period of ten years by reason of albumen and casts being found in his urine, it could not be said, and reasonable minds could not differ on the question, that the information with reference to said matter was very important and unquestionably material, and the concealing of said information, whether intentional or not, would vitiate the contract. It is revealed by the testimony of the physicians in this case that a person's urine on some days may be entirely free from albumen and casts, and on other occasions contain same, and that a chronic case of kidney trouble will frequently show the urine clear, and at other times show it to contain a quantity of both albumen and casts. If the appellant had been in possession of any information showing that the applicant, Mr. Dossett, had been rejected after 1915, or that his urine had contained albumen and casts after that time, the contention of appellee that appellant was estopped would be more tenable.

The record, however, reveals the fact that in 1916, Mr. Dossett made a successful application for insurance, and his urine at that time was clear, and again made application in December, 1920, just two months before the application in this case was made, and his urine was clear of albumen and casts, which tended rather to throw appellant off its guard. The record does show that the appellant, before it issued the policies, had four different examinations made of Mr. Dossett's urine and each of them was clear; but it could not be said under the circumstances in this case that, because of the investigation which appellant made, and the effort it put forth to ascertain the true con-

dition, it thereby waived the false or untrue statements and misrepresentations made by the applicant for insurance. If that were the rule, then insurance companies could not afford to make individual investigations. It is not a sound doctrine to say that, because the insurance company made an individual investigation, it waived the statements as made by the assured.

[11] Under the facts in this cause, appellant is entitled to a rescission of the contract made with A. J. Dossett and is entitled to a cancellation of said insurance policies. The judgment of the trial court is in all things set aside, and judgment is here rendered, canceling the insurance policies sued on by appellee and denying appellee any recovery thereon, and it is further ordered that the appellee pay all costs of the trial court and costs of appeal.