UNITED BENEV. ASS'N v. BAKER.†

(Court of Civil Appeals of Texas. Texarkana. Nov. 16, 1911. Rehearing Denied Dec. 7, 1911.)

INSURANCE (§ 723*) — REPRESENTATIONS — "RISK ASSUMED."

Under Acts 31st Leg., 1st Called Sess. c. 36, § 8, as amended by Acts 31st Leg. 2d Called Sess., c. 22, § 1, providing that all benefit certificates issued by fraternal associations shall be noncontestable on account of any statement or representation made unless material to the risk assumed, the term "risk assumed" must be taken to mean the hazard of the contract determined by the perils menacing the life of the insured, and hence a false representation that defendant had never had a certain practicably incurable disease was material to the risk and would avoid the policy which provided that a false answer to such question avoided the policy, even though the applicant died of a wholly different disease.

[Ed. Note.—For other cases, see Insurance, Cent. Dig. §§ 1859–1865; Dec. Dig. § 723.*
For other definitions, see Words and Phrases, vol. 7, pp. 6245–6246.]

Appeal from District Court, Tarrant County; W. T. Simmons, Judge.

Action by Willie Baker, by his guardian, against the United Benevolent Association. From a judgment for plaintiff, defendant appeals. Reversed and rendered.

N. J. Wade, for appellant. McLean & Scott and R. C. Fuller, for appellee.

HODGES, J. The appellant is a fraternal benefit association incorporated under the laws of this state, and this suit was instituted against it to recover the sum of $1,000 upon a policy theretofore issued upon the life of C. T. Baker, deceased. Payment was resisted upon the ground that in his application for insurance Baker made false statements and representations concerning a disease with which he had previously been afflicted. The case was tried before the court without a jury, and a judgment rendered against the appellant for the amount of the policy. The court found that the evidence

established the following facts: That the deceased, on the 27th day of November, 1909, became a member of appellant's order, and there was issued to him a certificate of insurance for the sum of $1,000. That Baker had paid his assessments and was in good standing at the time of his death, which occurred in May, 1910. That in his examination at the time of making his application for insurance Baker was asked if he had ever been afflicted with syphilis, to which he answered, "No," and that this answer was false. That Baker had in fact been afflicted with syphilis, and had been treated for that disease for three or four years and up to within a year or two before making his application for insurance, but that he had been cured before becoming a member. That Baker died "from paralysis and dulled mental faculties, but that the same were not caused by syphilis, and that syphilis did not contribute to his death." Upon these facts the court concluded as a matter of law that the policy of insurance was enforceable, and rendered judgment accordingly.

The application for insurance made by Baker contained, among others, the following stipulations and provisions: "I hereby agree that I am in sound mental and physical condition and that the foregoing answers and statements, whether written by my own hand or not, together with the answers and statements made or to be made to the medical examiner in the continuance of this application are warranted to be full, complete, and true, and shall, together with all the agreements hereinafter made, form the basis for any certificate or membership issued thereon. It is agreed by myself and binding upon all parties who may hereafter become interested that if any statement in this application, or to the medical examiner, or in any certificate of health that may be hereafter given, or in the proofs of loss or death by which any certificate or membership issued thereon mature, is untrue said certificate shall be null and void and all rights, title and interest in and to the same as well as the rights of my heirs and beneficiaries to the benefits and privileges accruing to members of the association in good standing shall be forfeited. In addition to the above provisions, I hereby agree that I will be governed and this contract shall be controlled by the laws, rules, and regulations enacted by the Supreme Lodge, United Benevolent Association, and the rules and regulations which may be adopted by the Supreme Lodge of the Association governing said association now in force or that may hereafter from time to time be enacted by said Supreme Lodge, or submit to the penalties therein contained." It was further stipulated in the application as follows: "It is hereby agreed that all the foregoing statements and answers made to the medical examiner are warranted to be true and are offered to the United Benevolent Association as a consideration of this contract." The certificate sued on recited that it is "issued in consideration of representations, warranties and agreements contained in applications which shall be deemed as of legal binding effect. Any failure, default, concealment of facts, or subtle deception will render this contract null and void." It further recited that settlement of claim based thereon "will be made in accordance with the constitution, laws, and rules of the association now in force or that may at any time hereafter be enacted." The constitution and laws (article 35) among other things provide: "Every beneficiary member who shall have been duly elected and obligated or initiated into a subordinate lodge and stood the necessary medical examination of the subordinate and Supreme Examiner is entitled * * * to a beneficiary certificate * * * according to his application and the recommendations of the medical examiners. * * * Said certificate, however, shall be subject to all requirements and qualifications contained therein and these laws and as recited in the application." Article 60 of the constitution and laws of the appellant reads as follows: "Any person who shall secure a membership and certificate in this association through false and fraudulent statements or through any misstatement or concealment of any fact which would in any degree have affected the decision of the medical examiners when passing upon his application shall have his certificate canceled, and in case of his death before discovery by the executive committee of such fraud, his beneficiaries or heirs shall not be entitled to receive anything except the money actually paid by the member to the Supreme Lodge, with legal interest thereon." The appellant offered in evidence the following agreement of counsel: "It is agreed that the supreme officers of the defendant, including the supreme president, supreme secretary, supreme medical examiner, and executive committee had no notice and knowledge of the fact that the deceased, C. T. Baker, had had syphilis, or been treated for same at any time, until after the date of his death, and that defendant is a fraternal beneficiary association as alleged." Dr. J. L. Cooper, supreme medical examiner for the appellant, testified that in passing upon the application he discovered nothing which indicated that the applicant had ever been afflicted with or treated for syphilis. "I accepted his answers as given in that application as true, and so assumed. I approved his application for $1,000. I had no information other than the application as to the physical condition or previous history of the deceased. * * * If it had come to my knowledge that C. T. Baker had been treated for syphilis within less than five years prior to the date of his application, I certainly would not have approved his application."

Section 8 of an act passed by the first

called session of the Thirty-First Legislature (chapter 36) defining and regulating fraternal benefit associations as amended contains the following provision: "All benefit certificates shall from the date of their issuance be noncontestable on account of any statement or representation made by said applicant for membership, either in his application or otherwise, or his medical examination, unless such representation shall be material to the risk assumed, and the burden of proof shall be upon the defendant to affirmatively establish such defense." See Acts 1909, 2d Called Sess. p. 443. It is evident that the trial judge based his ruling upon the conclusion that the misrepresentation made by Baker, the insured, concerning his previous syphilitic affection, was not material to the risk assumed, because the testimony failed to show that his death was attributable to that disease. While the court finds as a fact that the paralysis of which Baker died was not caused by syphilis, there is very strong evidence to the contrary. But that issue is of no importance if it sufficiently appears that this previous affection was such as might reasonably have been considered a menace to the prolongation of Baker's life, and that had it been revealed the application would have been rejected by the appellant. The question is: What is meant by the words "risk assumed," as used in the statute? Webster defines "risk" as the "chance of encountering hazard, or peril, or exposure to such a chance; hazard, danger; degree of exposure to loss or injury; an obligation or contract of insurance on the part of the insurer." Black in his Law Dictionary thus defines "risk" in insurance law: "The danger, or hazard, of a loss of the property insured; the casualty contemplated in a contract of insurance; the degree of hazard." We know of no reason why the statutory signification of the word "risk" should be different from that given by the above authorities. In contracts of life insurance the insurer agrees, in consideration of the payment of stipulated premiums, at stated intervals, to pay to a named beneficiary a specific sum upon the death of the insured. The particular *risk is assumed* at the time this contract is made, and its magnitude is determined from the sum of all the perils which then menace the prolongation of the life of the insured, and those which may reasonably be expected to arise in the course of time. The risk of insuring the life of one afflicted with a malignant and incurable disease is considered much greater than that of insuring the life of a perfectly healthy individual without any trace of inherited disorders; yet the latter may be the first to die. The risk, then, is measured when the contract is made, not when death occurs. It may also be said that in another sense the expression "risk assumed" should be regarded as referring to the contract of insurance itself, and that any matter which was material to be considered in the making of that contract, or which if known would have prevented either party from executing it upon the terms agreed on, should properly be considered as material to the risk assumed. This construction is, we think, supported by the weight of authority in other states having laws similar to our own. In the state of Pennsylvania there is a statute which provides that, whenever the application for the policy of life insurance contains a clause of warranty, no misrepresentation or untrue statement made in good faith shall avoid the policy, unless it relates to some matter material to the risk. In construing that provision of the statute the court of last resort in Pennsylvania took occasion to pass upon the very question here involved. In Murphy v. Prudential Ins. Co., 205 Pa. 444, 55 Atl. 19, the court had under consideration a suit upon an insurance policy where the defense was based upon the fact that the insured had made false representations concerning his former health. The application contained the following questions: "Are you in good health? Yes. When were you last attended by a physician? Four years ago. For what complaint? Neuralgia of the face, due to a bruise. Have you ever had (answer 'yes' or 'no' to each) spitting of blood? No. Have you ever had any serious illness? No." After discussing the issues of fact and quoting the statute above referred to, the court reiterated with approval the following extract from a previous decision rendered in that state: "The plaintiff can only recover if the declaration of the assured, upon the faith of which the risk was taken, was strictly true in every material part. It will not do to say that this was immaterial. Every fact is material which increases the risk, or which if disclosed would have been a fair reason for demanding a higher premium; nor is it of any consequence that the death was not in fact produced by a cause connected with the subject of the misrepresentation. One who falsely declares himself free from consumption cannot effect a valid insurance on his own life, though he died of cholera. A soldier or sailor who warrants himself a merchant has a void policy, even though he is not slain in battle or does not perish at sea." The court then concludes: "Under the interpretation placed upon the act of 1885 (the one above referred to) by the numerous decisions of this court, it is clear that the statements or answers made by the insured in this case alleged by the defendant to be false relate to matters material to the risk. The statements were made in reply to questions asked for the evident purpose of ascertaining the true condition of the applicant's health at the time of the delivery of the policy and prior thereto. The acceptance or rejection of the risk, as well as the rate of the premium, would depend on the information elicited by the questions. * * * A truthful response to any of the questions was

a prerequisite to the intelligent and safe action by the defendant in passing upon the application of the insured."

The Supreme Court of Texas, in the case of Fidelity Mutual Life Association v. Harris, 94 Tex. 25, 57 S. W. 635, 86 Am. St. Rep. 813, had under consideration a policy of insurance issued and delivered under the laws of Pennsylvania. In a suit upon the policy recovery was resisted upon the ground that the insured had made false representations regarding a matter material to the risk assumed. It was shown that the insured did not die of the disease about which the misrepresentation was made, but of another. The court said, after discussing several decisions rendered by the Pennsylvania court: "It thus appears that by the law of Pennsylvania statements such as those made in Harris' application concerning previous medical attendance are material to the risk, and when untrue avoid the policy. This is a rule of substantive law, and not merely one of procedure. How it is to be made effectual in the trial of a case, whether by peremptory instruction, or by a declaration in the charge that the matter is material, or by setting aside a verdict rendered in disregard of it, is a question of procedure; and we agree with the Court of Civil Appeals that the practice in Pennsylvania as shown by this decision is not materially different from our own. In both states when the evidence is clear and uncontroverted it is error to submit the question to the jury, and error to allow a verdict thus against the law and evidence to stand. That the representations under discussion were material is sufficiently shown by the quotations from the decisions. See, also, Bliss, Insurance, Cobb v. Association, 153 Mass. 176, 26 N. E. 230 [10 L. R. A. 666, 25 Am. St. Rep. 619]; Numrich v. Lodge [City Ct. N. Y.] 3 N. Y. Supp. 553. It may be true that an error in statement in an application concerning medical attention might in some cases appear to be immaterial, but this cannot be held as to those in this case."

A statute of Massachusetts provides that no representation or warranty made in the negotiation of a contract of insurance shall be deemed material to defeat the policy unless made with actual intent to deceive, or unless the matter misrepresented or made a warranty increased the risk. In the case of Brown v. Greenfield Life Association, 172 Mass. 498, 53 N. E. 129, after discussing a number of previous decisions and upon a review of the facts of the case then under consideration, the court said: "The charge was also wrong in intimating that the plaintiff might recover even if the assured had consumption when he obtained his insurance, unless he dies of the consumption to which he was then subject. Whether his misrepresentation as to consumption was as to a matter which increased the risk of loss did not de-

pend upon whether he dies of the disease, but upon whether the fact that he had consumption increased the risk that he would soon die."

In the case of Jeffrey v. United Order, etc., 97 Me. 176, 53 Atl. 1102, it was said: "The answers of an applicant for life insurance as to his present and past condition of health are unquestionably material to the insurance risk proposed. The policy, if issued at all, will be issued on the faith that they are true. These answers afford in part the test by which it is determined whether to issue a policy at all or not. Hence it follows that such answers are material and must be true. If they were warranties, of course the same result would follow." See, also, 25 Cyc. 810, 811, for collection of similar authorities.

The foregoing authorities all construe the language, "material to the risk assumed," and other equivalent expressions, as referring to those matters which enter into and materially affect the burden assumed in the making of the contract of insurance. Why should the courts of this state hold differently? There appears to us no good reason for so doing. If the Legislature of this state had intended to confine the materiality of matter affecting the risk assumed to such as caused, or contributed to cause, the death of the insured, it could easily have placed that intention beyond doubt. The testimony is uncontradicted that the disease which Baker concealed materially affected him as a subject of insurance, and that had he disclosed the truth would have caused the rejection of his application.

In this state of the record, we think the judgment of the trial court should be reversed, and the judgment here rendered for the appellant; and it is, accordingly, so ordered.