## SUPREME RULING OF FRATERNAL MYSTIC CIRCLE v. HANSEN.

(Court of Civil Appeals of Texas. San Antonio. Jan. 15, 1913. Rehearing Denied Feb. 5, 1913.)

1. INSURANCE (§ 825*)—MUTUAL BENEFIT ASSOCIATION—MISREPRESENTATIONS OF APPLICANT—QUESTION OF FACT.

Rev. Civ. St. 1911, art. 4834, which provides that benefit certificates in mutual benefit associations shall be noncontestable for misrepresentations by the applicant, unless material to the risk, but does not state that the question of materiality is for the jury, leaves the question one of law for the court upon the jury's findings or upon the uncontroverted facts.

[Ed. Note.—For other cases, see Insurance, Cent. Dig. § 2009; Dec. Dig. § 825.*]

2. INSURANCE (§ 761*) — REINSTATEMENT — MISREPRESENTATIONS — "MATERIAL TO THE RISK."

Statements, in an application for reinstatement in a mutual benefit association, that the applicant was of sound constitution, in good health, and that he had had no severe illness, local disease, or injury since his original petition, when in fact he had had malarial fever, had two operations for hydrocele, had suffered from dysentery and diarrhea or inflammation of the bowels, caused by catarrh of the stomach, and had disease of the genital organs, were misrepresentations "material to the risk" within Rev. Civ. St. 1911, art. 4834, providing that benefit certificates shall be noncontestable for misrepresentations by the applicant, unless material to the risk assumed, precluding recovery on the policy; any fact concerning the health, condition, or physical history of the applicant, which would naturally influence the association in determining whether it would grant the reinstatement, being material to the risk (citing Words and Phrases, vol. 5, p. 4406).

[Ed. Note.—For other cases, see Insurance, Cent. Dig. § 1924; Dec. Dig. § 761.*]

3. INSURANCE (§ 761*)—APPLICATION FOR REINSTATEMENT — MISREPRESENTATIONS — KNOWLEDGE OF APPLICANT.

False representations, in a petition for reinstatement in a mutual benefit association, will avoid the insurance when material, though ignorantly made, especially where their truth is expressly warranted and made a condition precedent to the insurance contract.

[Ed. Note.—For other cases, see Insurance, Cent. Dig. § 1924; Dec. Dig. § 761.*]

Appeal from District Court, Fayette County; Frank S. Roberts, Judge.

Action by Mrs. Ella Hansen against the Supreme Ruling of the Fraternal Mystic Circle. From judgment for plaintiff, defendant appeals. Reversed and rendered.

Meador & Davis, of Dallas, for appellant. John T. Duncan, of La Grange, for appellee.

TALIAFERRO, J. This is an action by Ella Hansen to recover $2,000, with interest, from the Supreme Ruling of the Fraternal Mystic Circle, a fraternal beneficiary association, incorporated under the laws of Pennsylvania, and doing a fraternal life insurance business in Texas under a permit from this state. The amount demanded was claimed to be due upon a certificate of insurance held by Julius Hansen, deceased husband of said Ella Hansen. The appellant contested the claim upon the ground that the certificate was void or voidable because of false or fraudulent statements, answers, and warranties of the assured, upon material matters, in procuring said certificate of insurance. The case was submitted to the jury upon special issues; all of which were resolved by the jury in favor of the appellee. Upon this verdict, the court rendered judgment against appellant for $2,160, with interest at 6 per cent. per annum from date of judgment.

### Conclusions of Fact.

Julius Hansen, the deceased, originally made application for membership and insurance with the defendant order on October 19, 1896, and at the same time made a full statement to the medical examiner as to previous health condition of family and self. He remained a member in good standing until December 31, 1908, at which time he was suspended for nonpayment of dues and assessments, and remained suspended until June 24, 1909. On May 31, 1909, he made application for reinstatement and health certificate, and filed petition for reinstatement. In his application for reinstatement, Hansen made the following statement: "I hereby warrant and declare that I am now [May 31, 1909] in sound health; that there is no cause in connection with my physical condition that would be a bar to my securing life insurance or in any way shorten my life; that I am not afflicted with any physical or mental defect or infirmity; that I have never suffered, nor am I now suffering, from tuberculosis, con-

---

*For other cases see same topic and section NUMBER in Dec. Dig. & Am. Dig. Key-No. Series & Rep'r Indexes

sumption, spitting of blood, habitual cough, * * * diseases of the liver or kidneys or cancer. * * * I expressly agree that the original application for membership, under which said certificate was issued, shall be effective and binding, the same as if made to said Fraternal Mystic Circle at this date. Now, in consideration of the foregoing statements and warranties, * * * I hereby request that I may be reinstated, and I agree that * * * my reinstatement shall be valid and binding only in consideration that such statements and warranties herein and in said petition are full, complete, and true, and the only statements and warranties in consideration of which I am reinstated."

In his petition for reinstatement, which seems to have been signed at the same time he signed the application for reinstatement, he made this statement: "I * * * do hereby certify that I am, on the day and year above written [May 31, 1909], of * * * sound constitution, in good health, and free from all diseases and infirmities, and I hereby repeat all statements and warranties contained in my petition for membership, and warrant the same and statement herein or to the worthy medical examiner, and each of them, to be full, complete, and true. I further certify that there has been no change in my family history and that I have had no severe illness, local disease, or personal injury since the date of my original petition and examination for membership in this order."

In his original application for membership in the order, made in 1896, and which it will be seen was renewed and reaffirmed in his application and petition for reinstatement, he stated to the medical examiner that he had never been afflicted with bilious or renal disease or hepatic colic; that he had not had cancer, tumor, catarrh, chronic diarrhea, disease of the liver or stomach, dysentery, dyspepsia, ulcers or open sores, diseases of the genital or urinary organs, and that he had not undergone any surgical operations. As a matter of fact, Hansen had suffered from a spell of malarial fever in 1908, and was treated about April, 1909, for dysentery; he was operated on for hydrocele on November 24, 1908, and again about two months later, and at the last operation was informed by the physician that he probably had cancer of the right testicle. About April or May, 1909, he was troubled with vomiting, fever, and evidences of tumor in the gastric region. In July, 1909, he was examined by another physician, who found evidences of operations having been performed for hydrocele. This physician treated him for dyspepsia or gastric catarrh. In March, 1910, he had an operation performed, and his right testicle removed. In March or April, 1910, Hansen submitted to an abdominal operation, in which it was discovered that he had a malignant growth or cancer of the omentum and intestines. On August 14, 1910, Hansen died of cancer of the stomach.

## Conclusions of Law.

[1] Article 4834, Rev. Civ. Stat. 1911 (amended Acts of 1909, 2 S. S. p. 443, § 8), applicable to mutual benefit associations, reads as follows: "All benefit certificates shall from the date of their issuance be made noncontestable on account of any statement or representation made by said applicant for membership, either in his application or otherwise, or his medical examination, unless such representation shall be material to the risk assumed; and the burden of proof shall be upon the defendant to affirmatively establish such defense." The amendment was adopted, we have no doubt, to meet the deficiency pointed out by the Supreme Court in the case of Modern Order of Praetorians v. Hollmig, 100 Tex. 623, 103 S. W. 476, wherein it was decided that article 3096aa, Rev. Stat., did not apply to mutual beneficiary associations. Article 3096aa closes with the following sentence: "And whether it was material and so contributed in any case, shall be a question of fact to be determined by the court or jury trying the case." Laws 1903, c. 69. The Legislature, in the act of 1909, did not adopt the language of article 3096aa, declaring the question of materiality one of fact for the jury, and it must be assumed that the intention was that this issue should remain one of law to be determined by the court upon the facts as found by the jury, or upon the uncontroverted facts proven.

[2] Adopting that view of the case, it remains for this court to determine: (1) Do the uncontroverted facts in this case show that Julius Hansen made misstatements of fact, in his application for reinstatement in the appellant order, in stating that he had not had any operation performed upon him, and with reference to the state of his health at the time of and prior to such application? (2) Were such representations, if made, material to the risk? The first of these questions must be answered in the affirmative. It is not controverted that Hansen had a spell of malarial fever in the summer of 1908, and within about four months before making said application had two operations performed upon him for hydrocele; that he had suffered from dysentery and pain in his bowels; that he had suffered from an attack of diarrhea or inflammation of the bowels in April, 1909, caused by catarrh of the stomach; and that he did have a disease of the genital organs.

We come, then, to the question of whether or not such misrepresentations were material. The answer to this question depends upon the meaning to be given to the term "material to the risk," as used in the statute. The authorities that we have been able to find agree upon a definition to this term,

which, applied to the facts in this case, would be substantially as follows: "Any fact concerning the health, condition, or physical history of the applicant, which would naturally have influenced the insurance association in determining whether or not it would issue the certificate or grant his petition for reinstatement." Words and Phrases, vol. 5, p. 4406, and citations there noted. The court, in its charge to the jury, defined the term as follows: "You are charged that what is meant by 'material to the risk assumed' is, Did Julius Hansen have any known disease on May 31, 1909, which caused, hastened, or contributed to his death?" and this charge, appellee contends, states the correct meaning of the words used by the statute. This was clearly error. The definition is far too narrow and limited in its scope. The Legislature did not mean to deprive insurance organizations of the right to freely exercise their judgment, in the light of complete information, as to whether they will or will not issue a policy of insurance upon the life of an applicant. The insurance company in this case exercised all the precaution that could be reasonably imposed upon it to ascertain the facts about Julius Hansen. It made very plain to the applicant that it considered it important, in passing upon his application, to be advised of all the facts concerning his past, as well as his present, physical condition. Hansen, and no one else, accurately knew all these facts, and it was his duty to reveal them. He was entering into a contract involving a considerable sum of money and good faith demanded of him to meet requirements of the insurance company to put it in possession of every fact which a prudent person would ordinarily consider in determining whether he was or was not a desirable risk for insurance. Having failed to do so, no one can complain that the company invokes the penalty fixed for violating the warranties contained in his application.

[3] The statements made by Hansen in his application were expressly warranted to be true, and their truth was by his agreement made a condition precedent to the validity of the contract. He could not have been ignorant of the true facts; but if he had been ignorant, and had stated the facts as he believed them to exist, their truth would still have been the criterion by which the association's liability must be judged. Mitchell v. Zimmermann, 4 Tex. 75, 51 Am. Dec. 717; Culbertson v. Blanchard, 79 Tex. 492, 15 S. W. 700, and cases cited. We think, therefore, that the court erred in refusing to instruct the jury to return a verdict for the defendant. Sup. Lodge K. & L. of H. v. Payne, 101 Tex. 453, 108 S. W. 1160, 15 L. R. A. (N. S.) 1277; Knights of Maccabees v. Hunter, 103 Tex. 612, 132 S. W. 116; United Benev. Ass'n v. Baker, 141 S. W. 543; Mur-

phy v. Prudential Ins. Co., 205 Pa. 444, 55 Atl. 19.

The judgment of the lower court is reversed, and judgment is here rendered for the defendant.