MODERN BROTHERHOOD OF AMERICA v. JORDAN. (No. 5371.)

(Court of Civil Appeals of Texas. Austin. May 20, 1914.)

1. WITNESSES (§ 268*)—CROSS-EXAMINATION—SCOPE AND EXTENT.

Where, in an action upon a benefit certificate, the defense being that insured in her application falsely stated that she had never had a certain disease, defendant had introduced a physician showing that he had treated her for the disease, it was proper to permit plaintiff to show on cross-examination that she completely recovered from the disease in a few days.

[Ed. Note.—For other cases, see Witnesses, Cent. Dig. §§ 931–948, 959; Dec. Dig. § 268.*]

2. EVIDENCE (§ 501*)—OPINION EVIDENCE.

Where, in an action upon a benefit certificate, defendant had shown that the insured had had an attack of malaria, contradicting her statement to the contrary in her application, plaintiff, her husband, was properly permitted to testify that, in his opinion, she recovered in a few days; he stating the facts upon which the opinion was based.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 2292–2305; Dec. Dig. § 501.*]

3. INSURANCE (§ 818*)—MUTUAL BENEFIT INSURANCE—ACTION ON POLICY—EVIDENCE.

In an action upon a benefit certificate, defended upon the ground that the insured falsely stated in her application that she had never had malaria, evidence that insured completely recovered from the attack within a few days was admissible upon the issue whether the false statement was material to the risk.

[Ed. Note.—For other cases, see Insurance, Cent. Dig. §§ 2003–2005; Dec. Dig. § 818.*]

4. INSURANCE (§ 723*)—"MATERIAL TO THE RISK."

"Material to the risk," as used in Rev. St. 1911, art. 4834, providing that all benefit certificates shall be uncontestable on account of any statement or representation made by the applicant, unless such representation shall be "material to the risk," means any fact concerning the health, condition, or physical history of the applicant which would naturally have influenced the insurer in determining whether to issue the certificate.

[Ed. Note.—For other cases, see Insurance, Cent. Dig. §§ 1859–1865; Dec. Dig. § 723.*]

5. INSURANCE (§ 819*)—MUTUAL BENEFIT INSURANCE—ACTION—EVIDENCE.

In an action upon a benefit certificate, evidence held not to show that a false statement made by insured in her application that she had never had malaria was material to the risk.

[Ed. Note.—For other cases, see Insurance, Cent. Dig. §§ 2006, 2007; Dec. Dig. § 819.*]

Appeal from District Court, Madison County; S. W. Dean, Judge.

Action by Albert T. Jordan against the Modern Brotherhood of America. Judgment for plaintiff, and defendant appeals. Affirmed.

Sparrow & Page, of Kansas City, Mo., and J. M. Brownlee, of Madisonville, for appellant. E. A. Berry, of Madisonville, and Hill & Elkins, of Huntsville, for appellee.

JENKINS, J. This suit was brought by appellee to recover upon a beneficiary certificate issued to his wife, Nancy J. Jordan, for $1,000 by the appellant. From a judgment in favor of appellee, the appellant has appealed, and assigned error as hereinafter indicated. The case was tried before the court without a jury, and, at appellant's request, the court filed findings of fact and conclusions of law as follows:

"Findings of Fact.

"(1) The defendant is a mutual benefit order, and has a local lodge at George, in Madison county, Tex.

"(2) On the 21st day of November, 1911, Mrs. Nancy J. Jordan then the wife of the plaintiff herein, and residing at George, in Madison county, Tex., made her application to the proper officers of the local lodge of the defendant order for admission thereto as a beneficiary member thereof, and, in pursuance to her said application, and after compliance with the rules and regulations and the constitution and by-laws of the defendant, and the regulations of said local lodge at George, the said Mrs. Nancy J. Jordan, was duly received and initiated as a member of said local lodge at George, and on the 22d day of December, A. D. 1911, there was issued under the hand and seal of the defendant, the Modern Brotherhood of America, by T. B. Hanley, Supreme President, and E. L. Balz, Supreme Secretary, and Charlie C. Martin, president of the local lodge, and Erna Rothenberg, secretary of the local lodge, benefit certificate No. 320827, for the principal sum of $1,000 in favor of the said Mrs. Nancy J. Jordan while in good standing in the fraternity, and payable to Albert T. Jordan after the death of the said Mrs. Nancy J. Jordan.

"(3) That on January the 5th, 1912, Mrs. Nancy J. Jordan died at George, in Madison county, Tex., and left surviving her Albert T. Jordan, her husband, and plaintiff herein, and at the time of her death the said certificate was payable to the said Albert T. Jordan, plaintiff herein, and was in full force and effect, and that said Nancy J. Jordan was in good standing in said society.

"(4) After the death of the said Nancy J. Jordan, the said Charlie C. Martin, president of the local lodge at George, applied to the said Balz, Supreme Secretary, for blanks on which to make out proof of loss, and the same were

furnished and the said proof of death made and forwarded to the said Balz, Supreme Secretary, in compliance with the rules and regulations of the defendant.

"(5) After receiving the said proof of loss, the said Balz brought the same before the proper officers of the defendant order, and wrote to plaintiff herein, Albert T. Jordan, that the defendant order denied liability on said certificate, the said denial of liability having been made prior to the institution of this suit.

"(6) The application of the said Nancy J. Jordan is dated November 21, 1911, and was made a part of the benefit certificate above referred to, issued to her, upon which plaintiff now sues, and certain questions were asked in said application and the medical examiner's report attached thereto, and were made a part of the certificate, and among other warrants contained in said application were the following: 'I declare and warrant that I am, to the best of my knowledge and belief, in sound bodily health and physical condition, and that the above statements, together with the statements and answers made and to be made by me in other parts of this application, are literally true. I further agree that any untrue statement or answer, or any concealment of fact, intentional or otherwise, in this application, shall forfeit the rights of myself and my beneficiary or beneficiaries to any and all benefits to be derived from my membership in said society.

"(7) I find that question 8 is as follows: 'Have you ever had any of the following diseases; answer "Yes" or "No" opposite each; if "yes," state the date, duration, and severity of the illness.' Under this question are enumerated some 30 diseases, beginning with appendicitis, and ending with venereal disease, and, among others, malaria is included. To each of these questions concerning diseases, the applicant answered 'No.'

"(8) I find that question 16 is as follows: 'When and by what physician were you last attended and for what complaint?' and that the answer was as follows: 'Have not had one, only in confinement.'

"(9) I find that the applicant warranted the exact literal truth of the answers to all of the questions asked, and agreed that the said answers, together with the by-laws, rules, and regulations of said Modern Brotherhood of America, should form the sole basis of contract between her and the said Modern Brotherhood of America.

"(10) I find that in the latter part of August or first part of September, preceding the signing of said application and the issuance of said certificate, that the applicant was taken with a chill, and was attended by Dr. Joe Rogers, who visited her once at the instance of her husband, Albert T. Jordan, and prescribed for her, and that she was completely cured of said illness. The said Dr. Joe Rogers made a superficial or cursory examination to locate the trouble, and pronounced it malaria, but as to whether he announced to the said Nancy J. Jordan that her trouble was malaria there is no proof.

"(11) I find that malaria is very prevalent, is easily cured, and, in fact, nearly always cured, and completely, cured when any one is affected with it.

"(12) After the applicant, Mrs. Jordan, had the chill above referred to, she attended to all of her household duties, picked from 150 to 200 pounds of cotton per day during the months immediately following said trouble, and, up to the 1st of January, was apparently well, and, as the testimony shows, merry; that there was no apparent trouble with her at any time until on the morning she was taken with the fatal malady, which was about the 1st of January, 1912. On said morning she went out to get a bucket of water, had already attended to her household duties, and came in to her husband, who was then ill, and announced that she was not feeling well, and in a few minutes was taken with a chill and became unconscious. Dr. Hayes was immediately called in, and pronounced her trouble congestion. Dr. Hayes is an old physician and examined her blood to see if there was any evidence of uræmic poisoning, and in said examination of the blood did not detect any uræmic poisoning, nor malaria, and it was his opinion and diagnosis that her congestion was of the brain, and was caused by the kidneys, liver, and other organs not performing their proper functions, and causing an engorgement of the blood in the brain. He did not pronounce her trouble malaria, and did not, after his examination of the blood, believe it to be malaria, though he did not examine the blood specifically for malaria. He examined it for uræmic poisoning.

"(13) Dr. Joe Rogers testified by deposition that he was called in to see Mrs. Jordan, made a superficial and cursory examination, and thought her trouble was uræmic poisoning, due to malaria, though he made no examination of the blood, and did not prescribe for her, as another physician had been called in first, and was not present when he was in the room where said Mrs. Jordan was, and he did not undertake to say that her trouble was malaria. Dr. Rogers further testified that from reports made to him and the history of the case that the applicant, Mrs. Jordan, was completely cured of the illness for which he treated her, which he says was in August, 1911.

"(14) Dr. Day testified that the only way to discover malaria in doubtful cases was by testing the blood.

"(15) I find that the incorrect answers given to questions 8 and 16, as above enumerated, were immaterial, in view of the complete cure of the trouble she had in August, 1911, and that the trouble she had in August, 1911, did not in any wise contribute to her death, and I find that the said incorrect statements were immaterial.

### "Conclusion of Law.

"I find, in view of the failure of the defendant to show the materiality of the answers, by reason of which they seek to avoid the payment of the certificate sued upon, and the showing made by the plaintiff to the contrary, that the plaintiff is entitled to recover, and that the policy is not avoided by the immaterial and incorrect answers given to questions 8 and 16, and therefore the plaintiff is entitled to recover the amount of said policy, less interest.

"To which findings of fact and conclusion of law, both the plaintiff and defendant excepted, and in open court gave notice of appeal to the Court of Civil Appeals for the First Supreme Judicial District of Texas."

The findings of fact are unnecessarily full, inasmuch as the court states, to some extent, the evidence upon which the findings were made. The court's findings of fact are sustained by the evidence, for which reason we adopt them as our own.

### Opinion.

[1] Appellant assigns error upon the admission of the testimony of Dr. Rogers, witness for appellant, given in answer to cross-interrogatory as follows:

"Q. If you treated this party, Nancy J. Jordan, in August, 1911, for biliousness or malaria, did you cure her of this ailment or disease? Ans. I never saw Mrs. Nancy J. Jordan, except the one time in August, 1911, until January, 1912, but from the reports I got the following few days after I did see her in Au-

gust, 1911, she was cured of that attack of malaria. I don't know what her condition was following the attack in August, 1911, as I never saw her, but my opinion is she was cured of that attack."

It was the contention of appellant that the certificate sued on was void, by reason of the statements made in her application, as shown by the sixth, seventh, and eighth findings of fact, supra, and the further fact that said statements were false. In support of this contention, appellant proved by Dr. Rogers that he attended Mrs. Jordan in the latter part of August, 1911, and treated her for malaria. Appellee sought to prove by said cross-interrogatory that Mrs. Jordan recovered from this attack. One of the grounds for appellant's assignment of error to this testimony is that it appears that Dr. Rogers based his opinion upon hearsay; that is, upon the report made to him by Mrs. Jordan's husband. It appears from the record herein that the reports referred to were that she appeared to be better for the next few days, at which time she was up and apparently well. We take it that Dr. Rogers' opinion was based partly on these reports, which are shown to have been true, and partly upon his diagnosis and prognosis made at the time he visited her. This testimony tended to establish the fact that Mrs. Jordan recovered from the attack of malaria for which Dr. Rogers treated her, and was admissible.

[2] Appellant also assigns error upon the admission of the testimony of appellee to the effect that his wife got well from said attack; the objection being that he was not a physician, and therefore his opinion as to her recovery was not admissible. He stated the facts upon which he based his opinion, granting that his statement that she got well was only an opinion. He said that she was in bed but a few days; that she never had another chill; that she was merry and joyous, attended to her household duties, and picked cotton all fall. It is well settled that a nonexpert witness may give his opinion as to testamentary capacity and sanity, and we see no reason why he should not do so as to recovery from a disease shown to be common in the neighborhood where he lives, the objective symptoms of which are so prominent as they are in chills and fever, and which the medical testimony in this case shows is easily cured, when not chronic.

[3] One of the objections to the testimony of each of the witnesses above named was that it was immaterial whether or not Mrs. Jordan recovered from the attack of malaria for which Dr. Rogers treated her, inasmuch as she stated in her application that she had not had malaria, and had not been treated by any physician, except in confinement, and that these statements were untrue. If the false statements were material to the risk, the certificate was void ab initio; and in such case it would be immaterial that she recovered from the attack of malaria, and died

from some other disease. United Benev. Ass'n v. Baker, 141 S. W. 543; Mystic Circle v. Hansen, 153 S. W. 353; Murphy v. Prudential Ins. Co., 205 Pa. 444, 55 Atl. 22. But the evidence that Mrs. Jordan recovered from the attack referred to was admissible upon the issue as to whether or not the false statement as to this matter was material to the risk.

[4] It seems to be the contention of appellant that, as the representations as to her previous sickness and being attended by a physician were declared in the application to be warranties, and as they confessedly were untrue, no recovery can be had. This was the law as to all insurance policies prior to the enactment of article 4959, R. S., and it was the law as to fraternal insurance prior to the enactment of article 4834, R. S. Hutchison v. Ins. Co., 39 S. W. 325. It was to relieve against the injustice arising from this rigid rule of the common law that the articles above referred to were enacted by the Legislature of this state.

Article 4834, R. S., reads in part as follows: "All benefit certificates shall from the date of their issuance be noncontestable on account of any statement or representation made by said applicant for membership, either in his application or otherwise, or his medical examination, unless such representation shall be material to the risk assumed; and the burden of proof shall be upon the defendant to affirmatively establish such defense."

What is meant by "material to the risk"? "The authorities which we have been able to find agree upon a definition of this term * * * substantially as follows: 'Any fact concerning the health, condition, or physical history of the applicant, which would naturally have influenced the insurance association in determining whether or not it would issue the certificate.'" Mystic Circle v. Hansen, 153 S. W. 352.

A material risk is any previous affection which might reasonably have been considered a menace to the prolongation of the life of the insured, and that, had it been revealed, the application would have been rejected. Benev. Ass'n v. Baker, 141 S. W. 543.

[5] One reason why applicants for insurance are asked by what physician they were last treated, or have been treated within a given time, and for what disease or diseases, is that the insurance company may consult such physician and obtain from him a statement as to the nature of the disease and his opinion as to recovery. Had Mrs. Jordan stated that she had been treated for malaria by Dr. Rogers in August previous to making her application in November, and had the agent of appellant consulted Dr. Rogers, and had Dr. Rogers stated what he testified to in this case, viz., that he visited Mrs. Jordan only one time, and from the reports received from her husband it was his opinion that she entirely recovered from that attack, would such information probably have caused the rejection of her application? We think not, especially in view of the facts shown by the record that malaria of this character was

very common in that county, was easily cured, and that Mrs. Jordan had for some three months been in apparent good health, able to do her household work, pick cotton, and remain in good spirits.

There are some diseases of such known incurability and fatal character as would be known to all men, nonprofessional as well as medical men, to be material to the risk of insurance, such, for instance, as tuberculosis, cancer, and syphilis, but East Texas chills and fever do not come in this category. · Article 4834 places the burden of proving the materiality of the false statement upon the defendant. No physician was called to prove that the sickness for which Dr. Rogers attended Mrs. Jordan did in any probability endanger the prolongation of her life, and no evidence was offered to show that any insurance company would probably have rejected her application had it known the facts in reference to such sickness.

Finding no error of record, the judgment of the trial court is affirmed.

Affirmed.