## FRANKLIN LIFE INS. CO. v. DOSSETT.*
### (No. 53.)

(Court of Civil Appeals of Texas. Waco. May 22, 1924. Rehearing Denied Oct. 16, 1924.)

1. **Insurance ⟪⟫646(1½)—Insurer has burden under statute of proving falsity and materiality of representations; "misrepresentation"; "material fact."**

Under Rev. St. arts. 4741, 4953, 4959, insurance companies have burden of proving, not only that representations of insured are false, but of establishing materiality thereof; "misrepresentation" being statement by assured of something as fact which is untrue and has tendency to mislead; "material fact" being one which would induce company to decline insurance altogether, or not to accept it except at higher premium.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Material Fact; Misrepresentation.]

2. **Insurance ⟪⟫389(1)—Applicant owes duty to honestly answer questions, though insurer with knowledge of false answers may not assert falsity as bar to recovery.**

Applicant for insurance owes duty to fully, fairly, and honestly answer questions, though, where insurer is aware that answers made are false, it cannot, after issuing policy and accepting premiums, plead such falsity as defense or bar to recovery.

3. **Insurance ⟪⟫253—Where facts specifically inquired of, full disclosure must be made, and insurer has right to rely on answer.**

Where fact is specifically inquired about, or question to applicant is so framed as to elicit desired fact, a full disclosure must be made, and insurer has right to rely on answer.

4. **Insurance ⟪⟫377(2)—Knowledge of falsity of some statements by applicant does not estop insurer from avoiding policy.**

Applicant will not be heard to say that, because insurer knew part of his answers were

untrue, it was charged with knowledge that all might be untrue, and to estop company from avoiding policy by reason of its knowledge of falsity and misrepresentations by applicant it is insufficient that it had knowledge of falsity of some only of said facts.

5. **Insurance ⟪⟫371—Where answer apparently covers all facts and prevents further investigation, insurer is not estopped to plead incompleteness.**

Where applicant's answer to question apparently embraces all facts and prevents further investigation, insurer is not estopped to plead incompleteness of his answers.

6. **Estoppel ⟪⟫52—Intent and knowledge of right essential to "waiver."**

Waiver is intentional relinquishment of known right and requires both knowledge of right and intention to release.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Waiver.]

7. **Insurance ⟪⟫256(1)—Material false representations avoid policy, unless specifically known to be untrue by insurer.**

Falsity of material statements avoids policy, unless insurer knew those identical statements were untrue.

8. **Insurance ⟪⟫668(6)—Where doubt as to materiality of representations exists, it is question for jury; otherwise, for court.**

Where doubt exists as to materiality of statements, question is for jury, though, where reasonable minds could not differ, it is duty of court to render judgment accordingly.

9. **Insurance ⟪⟫291(1), 300—Questions as to previous applications for insurance and as to applicant's health held material.**

Questions as to whether applicant had been previously denied insurance and as to his present health *held* as matter of law material.

10. **Insurance ⟪⟫388(3)—Insurer's investigation is not waiver of falsity of statements made by applicant.**

Insurance company, by making private investigation, does not waive falsity of statements made by applicant.

11. **Insurance ⟪⟫291(1), 300—False statements as to prior applications, present health, and physical examinations held to vitiate policy and warrant rescission.**

False statement that applicant had never been denied a policy applied for, nor offered a substandard policy, and false statements as to present health and recent examinations by physicians, *held* sufficient to vitiate the policy and entitle insurer to a rescission.

Appeal from District Court, McLennan County; James P. Alexander, Judge.

Two actions, one by the Franklin Life Insurance Company against Mrs. Jennie D. B. Dossett, the other by Mrs. Jennie D. B. Dossett against the Franklin Life Insurance Company, consolidated and tried together. From a judgment against the insurance company, it appeals. Judgment of trial court

⟪⟫For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes
*Writ of error granted December 20, 1924.

set aside, and judgment rendered for insurance company.

Williams, Williams, McClellan & Lincoln, of Waco, for appellant.

Sleeper, Boynton & Kendall and J. D. Williamson, all of Waco, for appellee.

BARCUS, J. On March 3, 1921, the Franklin Life Insurance Company, appellant, issued three standard 20-year pay insurance policies on the life of A. J. Dossett, two for $10,000 and one for $15,000. The policies contained the incontestable clause after one year, except for failure to pay premiums, and contained all the conditions as provided in standard life insurance policies under the Texas Statutes. On December 31, 1921, A. J. Dossett died. Mrs. Jennie D. B. Dossett was the beneficiary named in each of the insurance policies. On January 18, 1922, appellant brought suit in the 19th district court against the appellee, Mrs. Dossett, to cancel each of said policies, alleging as grounds therefor certain false and fraudulent statements made by A. J. Dossett in his applications for the insurance, which will be more fully stated hereafter, and tendered into court the premiums paid on said policies. On June 13, 1922, appellee filed suit in the 19th district court against appellant on the three policies in controversy. The two suits were by the district court consolidated and tried under the number and style of the suit brought by appellee against appellant.

The consolidated causes were tried to the court without a jury and resulted in a judgment being rendered by the court in favor of appellee for the face of said policies, together with 12 per cent. penalty, 6 per cent. interest from the date of the death of A. J. Dossett, and $7,500 attorney's fees. The court filed its findings of fact and conclusions of law, which, if unchallenged, are sufficient to sustain the judgment. The appellant has assailed the findings of the court on every material issue and has assigned a number of errors to the action of the trial court in its failure to sustain its plea in abatement, and in the admission and rejection of testimony, and the rulings of the court on the pleadings. From the view we take of the case, it will not be necessary to pass in detail on the various assignments raised by the appellant.

Appellant contends that the policies of insurance were void and are unenforceable because of false and fraudulent answers made and information concealed by A. J. Dossett, in the answers which he made in his application for the insurance, with reference to the following questions:

The application stated:

"I have not applied to any company, association, society, or agent for insurance without having received a policy of the exact kind and amount applied for. (If there is any excep-

tion or qualification to this statement, applicant must give full particulars.)" To which he answered: "No."

"Question 11: Have you ever been examined for insurance without receiving the policy applied for? (If yes, give date and name of company or society.)" Answer: "Yes; Bankers' Life. 1910."

"Question 13: Have you now, or have you ever had any of the following diseases or ailments: Albumen or sugar in urine, any d'sease of the kidney or bladder?" Answer: "No."

"Question 14: Give names and addresses of all physicians who have attended or prescribed for you or whom you have consulted during the past five years, together with nature and date of ailments." Answer: "No sickness."

"Question 15: Have you had any sickness, ailment, or injuries since childhood that have not been named or described above? (If yes, give the dates and details.)" Answer: "No."

He further answered this question:

"Dr. A. C. Scott, Temple, Tex., makes general physical examination twice each year; has never found any trouble."

The applications which A. J. Dossett signed stated that the answers contained therein were full, complete, and true.

The testimony with reference to the facts, in so far as they involve the above questions, is undisputed. It was an established fact in the trial court that A. J. Dossett had applied for insurance, and been rejected, or obtained policies different from the one applied for, as follows: In 1916 the New York Life Insurance Company issued him a substandard policy; in 1911 the Reliance Insurance Company rejected his application; in 1910 the State Mutual Insurance Company of Georgia rejected his application; he was rejected by the Southwestern Life Insurance Company of Dallas in 1907; he was rejected by the Kansas City Life Insurance Company in 1911; he was rejected by the Southland Life Insurance Company in 1914; he was told by the Amicable Life Insurance Company in February, 1920, that it would not issue him a policy. The evidence shows that the answer he made to the medical examiner in answering question No. 11 was admittedly incomplete, in that he had been examined by all of the companies named above and rejected, except the New York Life, which had issued him a substandard policy.

It was established beyond question that his answer to question No. 13 above was untrue in the following respects: In 1911 he was examined by the physician for the Bankers' Life Insurance Company, and was rejected because he had both albumen and casts in his urine, and was again examined in 1915 by some insurance company, the name of which is not revealed, and rejected because he had albumen and casts in his urine. In 1911 he was examined by Dr. Graves and Dr. Thompson in Galveston and was told that he had albumen and casts in his

urine, and on their suggestion changed his business from that of a banker to the compress business because of his physical condition. He thereafter, the date being uncertain from the testimony, informed Dr. Sapp at Cameron, and later Dr. Scott at Temple, that the doctors had told him that he had albumen and casts in his urine. In 1907 the Southwestern Life Insurance Company of Dallas rejected his application for insurance because his urine contained albumen and casts, and Mr. Dossett knew the reason why he was declined. During December, 1919, and January and February, 1920, Mr. Dossett was examined four times by Dr. Brumby and once at Scott Sanitarium in Temple, and each of the examinations revealed the fact that he had albumen and casts in his urine, and Mr. Dossett was so informed. The last examination by Dr. Brumby for the Amicable Life Insurance Company was made in the presence of Mr. Dossett, and at said time he was informed that the fact that albumen and casts had been found was a bar to his obtaining insurance. On May 10, 1920, he was examined at the Scott Sanitarium in Temple, and his urine contained albumen and casts, and he was informed thereof.

With reference to the answer to question No. 14 above, it was an established fact that in November, 1918, Dr. Witte in Waco had attended A. J. Dossett as a physician and informed him at said time that, in his opinion, he had renal colic, and advised him to go to a sanitarium for an X-ray examination; that Dossett did go to the Scott Sanitarium in Temple, and had a thorough examination made by the physicians in Temple, and in their examinations they found nothing "seriously" wrong with Mr. Dossett's physical condition. Again, in the fall of 1919, Dr. Witte attended Mr. Dossett for personal illness and pronounced it a bad cold or slight attack of influenza or la grippe. In December, 1919, and January and February, 1920, Mr. Dossett was examined at four different times by Dr. Brumby and Dr. Davis of the Amicable Life Insurance Company, and was informed that he had albumen and casts in his urine, and in February, 1920, Dossett had a thorough examination, including an X-ray examination, in the Scott Sanitarium at Temple, and they reported to him that his urine at that time contained albumen and casts.

The same answers apply to the facts with reference to Dossett's answer to question 15 as herein set forth. The appellee does not controvert the above facts, but contends that the answers made were not material and were not willfully and knowingly made, and that the appellant knew the facts when the policies were issued and knew that the answers were not complete and full, and if it did not know all the facts, that, by the use of the information it had at that time, it could have, if it desired, learned the real facts. In support of said contention, it is shown by the record that, at the time appellant issued the policies in question, it knew that the Bankers' Life Insurance Company in 1911 had rejected Mr. Dossett for life insurance by reason of albumen and casts having been found in his urine, and also that in 1915 he had been rejected by some company for the same reason; the name of the company not being disclosed. This information was obtained from what in insurance circles are known as the Medical Impairment Bureau, the American Life Convention, and the Retail Credit Company, appellant having a card from said organizations with that information contained thereon. Said cards also in connection with that information revealed the fact that in June, 1916, and in December, 1920, Mr. Dossett was examined by different companies for insurance and his urine did not show either albumen or casts.

By reason of the amount of the insurance applied for and by reason of the fact that he had, in 1911 and 1915, been rejected by insurance companies because albumen and casts were found in his urine, appellant, before it issued the policies, requested the applicant, Mr. Dossett, to have two different physicians make an examination of his urine in Waco, and required two specimens of his urine to be sent to the home office for examination, and none of said examinations made in January and February, 1921, showed any trace of either albumen or casts in his urine.

Appellant, at the time it issued the policies in question, did not have any knowledge or information of any other rejections, except the one in 1911, and the one in 1915, and some evidence of a rejection in 1910. It had no information that Mr. Dossett had, at any time, been informed that his urine contained albumen and casts.

[1] Under the law in Texas, insurance companies are required to write into their policies the statement that same will be incontestable after the expiration of not more than two years from the date they are issued, except for nonpayment of the premium, and that all statements made by the insured shall, in the absence of fraud, be deemed representations and not warranties, and that no statement contained in the application shall avoid the policy, unless it is fraudulent or material to the risk. Articles 4741, 4953, 4959. The burden is placed upon the insurance companies to prove, not only that the misrepresentations are false, but to establish the materiality thereof. Southern Surety Co. v. Butler (Tex. Civ. App.) 247 S. W. 611. A misrepresentation to obtain insurance is a statement made by the assured of something as a fact which is untrue and which has a tendency to mislead the company. 3 Joyce on Insurance, par. 1884. A

material fact is any fact, the knowledge or ignorance of which would naturally influence the insurer in making the contract at all, or in estimating the degree and character of the risk, or in fixing the rate of insurance. Clark v. Union Mutual Fire Ins. Co., 40 N. H. 333, 77 Am. Dec. 721; Boggs v. American Ins. Co., 30 Mo. 63; Murphy v. Prudential Ins. Co., 205 Pa. 444, 55 Atl. 19; Penn Mut. Life Ins. Co. v. Mechanics' Savings Bank, 72 Fed. 413, 19 C. C. A. 286, 38 L. R. A. 33, 70; St. Paul Ins. Co. v. Huff (Tex. Civ. App.) 172 S. W. 755; United Benev. Ass'n v. Baker (Tex. Civ. App.) 141 S. W. 541; Supreme Ruling of Fraternal Mystic Circle v. Hansen (Tex. Civ. App.) 153 S. W. 352. Good faith is required on the part both of the insurance company and the insured.

[2] If the insurance company is aware of the fact that the answers made by the applicant for insurance are false, it cannot, if it issues the policy and accepts the premium, plead the falsity of said statements as a defense or bar to recovery. Sun Life Ins. Co. v. Phillips (Tex. Civ. App.) 70 S. W. 603; Mutual Life Ins. Co. v. Nichols (Tex. Civ. App.) 24 S. W. 910. On the other hand, it is the duty of the applicant for insurance to make a full, fair, faithful, and honest answer to all questions that are propounded to him by the insurance company. If the assured makes an answer to a question, he should make a full and complete answer. Cable v. United States Life Ins. Co., 111 Fed. 19, 49 C. C. A. 216; 3 Joyce on Insurance, pars. 1889, 1894, 1895; 3 Cooley on Briefs of Insurance, p. 2007.

[3] Where the fact is specifically inquired about, or where the question is so framed as to elicit the fact desired, there must be a full disclosure, and the company has a right to rely on the answers. 3 Joyce on Insurance, par. 1914; 3 Cooley on Briefs of Insurance, p. 2009; U. S. Gypsum Co. v. Shields (Tex. Civ. App.) 106 S. W. 725; affirmed by Supreme Court 101 Tex. 473, 108 S. W. 1165; Labbe v. Corbett, 69 Tex. 503, 6 S. W. 808. The test of materiality is: Did the misrepresentation induce the insurer to accept the risk? 3 Joyce on Insurance, par. 1892.

[4, 5] In order to estop the insurance company from avoiding the policies by reason of its knowledge of the falsity and misrepresentation of the statements made by the applicant, it is not sufficient that it had knowledge of the falsity of some of said facts. Where a party makes a statement that apparently embraces all of the facts and thereby prevents a further investigation, he cannot claim that the company is estopped to plead the incompleteness of his answers.

[6] A waiver is the intentional relinquishment of a known right, and there must be both knowledge of the existence of the right and the intention to release it. Brotherhood

of R. R. Trainmen v. Roberts, 48 Tex. Civ. App. 235, 107 S. W. 626; United States Ins. Co. v. Moriarty (Tex. Civ. App.) 36 S. W. 943; Kansas City Life Ins. Co. v. Blackstone (Tex. Civ. App.) 143 S. W. 702; Hoxie v. Home Ins. Co., 32 Conn. 21, 85 Am. Dec. 243; 25 Cyc. p. 865; 3 Cooley on Insurance, p. 2467; Moore v. Beakley (Tex. Com. App.) 215 S. W 957; Buchanan v Burnett, 102 Tex. 492, 119 S. W. 1141, 132 Am. St. Rep. 900.

[7] Unless the applicant reveals all the material facts about which he is asked, it does not lie in his mouth to say that, because the company knew part of his answers were untrue, it was charged with notice that all of his answers might be untrue. If the applicant makes statements that are material, which are untrue, it will avoid the policy, unless the company knew that those identical statements were untrue. 3 Cooley, p. 2001; Knights of Pythias v. Rosenfeld, 92 Tenn. 508, 22 S. W. 204; where the questions asked are admittedly material to the risk, and a false answer is given, the courts uniformly hold that a policy is unenforceable and cannot be collected. Indiana & Ohio Livestock Ins. Co. v. Smith (Tex. Civ. App.) 157 S. W. 755; State Mutual Life Ins. Co. v. Rosenberry (Tex. Com. App.) 213 S. W. 242; American Nat. Ins. Co. v. Anderson (Tex. Civ. App.) 179 S. W. 66; Wright v. Federal Life Ins. Co. (Tex. Com. App.) 248 S. W. 325; Fidelity Mutual Life Ins. Co. v. Harris, 94 Tex. 25, 57 S. W. 635, 86 Am. St. Rep. 813; United Benevolent Ass'n v. Baker (Tex. Civ. App.) 141 S. W. 541; Mutual Life Ins. Co. v. Hilton-Green, 241 U. S. 613, 36 Sup. Ct. 676, 60 L. Ed. 1202; 3 Joyce on Insurance, pars. 1896, 1897, 1912, 1916, 1924; Mutual Life Ins. Co. v. Crenshaw (Tex. Civ. App.) 116 S. W. 375; Hall v. Hargadine McKittrick Dry Goods Co., 23 Tex. Civ. App. 149, 55 S. W. 747.

[8] If there is any question or doubt about the false statements or representations being material, it then becomes a question of fact to be passed on by the trial court or jury. Where the evidence is such that reasonable minds could not differ, it is the duty of the trial court, as well as the duty of this court, to render such judgment as the evidence requires. Where the questions asked in an application for life insurance policy are unquestionably material, and the answers are admittedly untrue, it is the duty of the court to render a judgment for the insurance company. Radley v. Knepfly, 104 Tex. 130, 135 S. W. 111; Freeman v. Huffman (Tex. Com. App.) 206 S. W. 819; Haass v. G. H. & S. A. Ry. Co., 24 Tex. Civ. App. 135, 57 S. W. 855.

It is unquestionably true in this case that Mr. Dossett had been rejected by a number of life insurance companies, ranging from 1910 down to February, 1920, and that said applications for insurance had been rejected

because of the fact that albumen and casts had been found in his urine. He had been told time and again by some of the most eminent physicians in Texas that both albumen and casts had been found in his urine, and, within less than a year prior to the time the applications for insurance in this case were made, a half dozen or more examinations of his urine had been made, and at least four different examinations revealed the fact that it contained albumen and casts, and he was so informed. He was rejected as an insurance risk by the Amicable Life Insurance Company less than a year before the applications were made to appellant. Mr. Dossett had suffered an attack of colic, which his physician told him was renal colic, in November, 1918, and he had had two different X-ray examinations made and a half dozen or more urinalysis examinations of his urine by different physicians within two years before the applications to appellant were made. The evidence shows that Mr. Dossett was a man of large financial resources and was an experienced business man, and it is inconceivable that he could, by inadvertence or by reason of forgetfulness, have overlooked or failed to make a full statement with reference to the rejections that he had had for life insurance, and with reference to the number of times he had been told that he had albumen and casts in his urine, and with reference to the treatments and examinations he had had from different physicians.

[9, 10] We think it is unquestionably true that the questions asked were, as a matter of law, material to the risk. Mr. Dossett himself had been informed that rejections by one company would likely cause rejections by others. He himself had been told, less than a year before the applications in this case were made, by Dr. Brumby of the Amicable Life Insurance Company that the frequent appearance of albumen and casts in the urine was cause for rejection. Where an applicant for insurance has been rejected time and again over a period of ten years by reason of albumen and casts being found in his urine, it could not be said, and reasonable minds could not differ on the question, that the information with reference to said matter was very important and unquestionably material, and the concealing of said information, whether intentional or not, would vitiate the contract. It is revealed by the testimony of the physicians in this case that a person's urine on some days may be entirely free from albumen and casts, and on other occasions contain same; and that a chronic case of kidney trouble will frequently show the urine clear, and at other times show it to contain a quantity of both albumen and casts. If the appellant had been in possession of any information showing that the applicant, Mr. Dossett, had been rejected after 1915, or that his urine had contained albumen and casts after that time, the contention of appellee that appellant was estopped would be more tenable. The record, however, reveals the fact that in 1916 Mr. Dossett made a successful application for insurance, and his urine at that time was clear and again made application in December, 1920, just two months before the application in this case was made, and his urine was clear of albumen and casts, which tended rather to throw appellant off its guard. The record does show that the appellant, before it issued the policies, had four different examinations made of Mr. Dossett's urine, and each of them was clear; but it could not be said under the circumstances in this case that, because of the investigation which appellant made, and the effort it put forth to ascertain the true condition, it thereby waived the false or untrue statements and misrepresentations made by the applicant for insurance. If that were the rule, then insurance companies could not afford to make individual investigations. It is not a sound doctrine to say that, because the insurance company made an individual investigation, it waived the statements as made by the assured.

[11] Under the facts in this cause, appellant is entitled to a rescission of the contract made with A. J. Dossett and is entitled to a cancellation of said insurance policies. The judgment of the trial court is in all things set aside, and judgment is here rendered, canceling the insurance policies sued on by appellee and denying appellee any recovery thereon, and it is further ordered that the appellee pay all costs of the trial court and costs of appeal.