## AMERICAN INS. UNION v. WYLIE.
### (No. 3759.)

Court of Civil Appeals of Texas. Texarkana. Dec. 18, 1929.

Rehearing Denied Jan. 9, 1930.

492

Marvin Roberson, of Fort Worth, and Geo. K. Holland, of Dallas, for appellant.

Smithdeal, Shook, Spence & Bowyer, of Dallas, for appellee.

WILLSON, C. J. (after stating the case as above). In its answer to appellee's suit appellant acknowledged it was liable to her in the sum of $721, which, it alleged, was $1 for each member of its class or group 3 to which the insured belonged on July 21, 1927, the day he died; alleged it had at all times on the filing of satisfactory proof of the death of the insured been willing and still was willing to pay her that sum; and asked the court to

enter judgment against it in appellee's favor for that amount, but in its favor for "all cost of suit."

It was provided in the policy issued to the insured by the Southern Benevolent Association that the beneficiary named therein (appellee here) should accept as full settlement for her claim on account of the death of the insured "$1.00 that shall have been collected from each member of his class in the association." There was no evidence showing the number of members in the insured's class on the day of his death, but there was undisputed evidence that an assessment for his death could not have been made by appellant before September 1, 1927, and that on that day there were 721 members in the insured's class. In that state of the evidence we think appellant's contention, so far as it was that its liability to appellee was on the basis of 721 members in the insured's class, should be sustained, unless it appeared, and appellee insists it did, that she was entitled to recover on the theory that the policy issued to the insured by the Southern Benevolent Association had in legal effect been exchanged for the "whole life level rate policy" referred to in the sixth section of the merger contract between said association and appellant set out in the statement above.

Appellee's contention with reference to that is predicated, mainly, on the fact referred to in said statement that on June 29, 1927, before he died July 21, 1927, the insured had a bank at Peacock to send to appellant at Fort Worth a check it received and retained possession of for the amount he should have sent it if he had exchanged the policy on the "assessment as needed plan" issued to him by the Southern Benevolent Association for one of appellant's "whole life level rate" policies as provided in said sixth section of the merger contract.

■ It is insisted that appellant's retention of the check was a waiver of an application by the insured for an exchange of policies, and entitled appellee to recover as if appellant had actually issued a "whole life level rate" policy in lieu of the "assessment as needed plan" policy held by the insured. It was on that theory, it seems, that the court submitted to the jury the issue as to whether appellant knew that the $6.38 check hereinbefore referred to was sent by the Peacock Bank on behalf of the insured "as a premium payment on a $1,500 whole life level rate policy" and an issue as to whether appellant by retaining the check as it did "waived the execution and delivery to it" by the insured "of application form 1047."

Appellant objected to the submission of the issues specified, on the ground that there was no evidence it had knowledge that the $6.38 check was sent on the insured's account and to pay a premium on a "whole life level rate" policy, and complains here because the court overruled its objection and submitted the issues. We agree with appellant that the action of the trial court was erroneous.

It will be seen on looking to the statement above, where the check is set out in full, that there was nothing on its face showing on whose account or for what purpose it was sent to appellant, and there was no evidence that appellant by letter accompanying the check or otherwise was advised as to those matters before the death of the insured. Affirmative testimony on appellant's behalf that it did not know anything more about the check than was shown on its face was uncontradicted, unless it was by testimony showing that the insured was the benevolent association's only member at Peacock, and that at times before said check was sent as stated he had remitted through the bank mentioned assessments made against him on account of the "assessment as needed plan" policy he held. It is argued that the testimony just referred to was sufficient to put appellant on inquiry to ascertain who sent the check and the purpose for which it was sent, and that it ought to be chargeable with knowledge of what such inquiry diligently pursued would have disclosed.

But certainly, we think, appellant owed appellee no other duty with reference to the check than to refrain from making an improper use of it. Had it assigned or cashed the check it may be it would have owed the insured the duty to make inquiry to ascertain on whose account and for what purpose the remittance was made, and, having ascertained that, to return the proceeds to the insured if it was unwilling to accept and use same to accomplish such purpose. But the evidence was it never either assigned or cashed the check.

■ Appellee insists the judgment was warranted by a stipulation in the merger contract as follows: "Fourteenth: All death and disability approved claims occurring among the members of Southern Benevolent Association herein merged and reinsured, the American Insurance Union binds and obligates itself to pay said claims the maximum amount in said certificates specified, and it is further agreed and understood that the American Insurance Union shall charge monthly each member of Southern Benevolent Association the same amounts, respectively, as charged each member for call which closed March 18, 1927, the same to continue throughout the year A. D. 1927, on all members not changing their certificates as herein provided." But we think it is clear, when all the stipulations in the contract, including those in said sixth section of the merger contract, are kept in mind, that the "maximum amount" referred to in the stipulation set out meant either the maximum amount for which a death or disability claim *had been approved*, or the maximum amount payable on a certificate according to its terms—which, in the instant case, was $721.

494

The judgment, so far as it was for a penalty and attorney's fees, was based on a statute (article 4736, R. S. 1925) as follows: "In all cases where a loss occurs and the life insurance company * * * liable therefor shall fail to pay the same within thirty days after demand therefor, such company shall be liable to pay the holder of such policy, in addition to the amount of the loss, twelve per cent damages on the amount of such loss together with reasonable attorney fees for the prosecution and collection of such loss." By the terms of another statute (article 4823, R. S. 1925) "fraternal benefit societies" were exempted from the operation of the penalty statute above set out. Appellant insists it was such a society and therefore not liable for the sums adjudged against it as a penalty and attorney's fees. We think the trial court had a right to conclude that appellant had failed to prove it was such a society within the meaning of the statute (articles 4820, 4821, and 4822, R. S. 1925), and overrule appellant's contention.

The judgment will be so reformed as to award appellee a recovery of $721, interest thereon at the rate of 6 per cent. per annum from September 1, 1927, 12 per cent. on the amount of said $721 and interest as a penalty, and $250 (agreed upon by the parties as reasonable) as attorneys' fees, a total of $1,160.54, and as so reformed will be affirmed.