## THE PRAETORIANS v. THOMPSON.

### No. 11537.

Court of Civil Appeals of Texas. Dallas.

Jan. 12, 1935.

Rehearing Denied Feb. 23, 1935.

Davidson, Randall & Gray, of Dallas, for appellant.

Houston & Johnson, of Dallas, for appellee.

JONES, Chief Justice.

Appellee, Ewell Thompson, instituted this suit in a district court of Dallas county as sole beneficiary of a policy of insurance issued to his wife, Myrtle M. Thompson, deceased, by appellant, The Praetorians. From a judgment awarding appellee the amount named in the face of the policy, the statutory 12 per cent. damages, and attorney fee for $300, appellant has duly perfected an appeal. The following are the facts:

The insurance policy in question was duly issued by appellant on September 19, 1931, and deceased, Myrtle M. Thompson, died January 2, 1932. Proper proof of death was made by appellee, and payment on the policy was soon thereafter refused by appellant. The statutory notice, required in order to fix liability for 12 per cent. damages and a reasonable attorney fee, was duly given and the suit instituted.

At the time deceased made written application for said policy of insurance, and in connection with such application, and in response to printed questions purportedly asked, the application signed by her shows that she never had had a surgical operation or been advised to do so; that she had never been for observation, care, or treatment in any hospital, sanitarium, asylum, or similar institution; that she had never had goiter; that she had had no children, and at the time of the application was pregnant; and that she had not consulted a physician in the last ten years. At the close of these and a great many other questions answered by her, but not necessary to be considered, there is in the printed statement: "I hereby warrant to The Praetorians that all the foregoing answers to questions asked herein are true and certify to said The Praetorians that said an-

swers have been set down correctly as they were made by me, whether written by me or not."

The application is what is styled a "non-medical application"—i. e., there was no medical examination previous to the taking of the application. A medical examination could have been ordered by appellant's director if, in his opinion, the answers of the applicant indicated the necessity for such an examination, and deceased, in her answers, stated that she was willing for such examination. None was required in the instant case. Appellant's agent was intimately acquainted with appellee and his deceased wife, had lived as a neighbor to them, and had been so acquainted with them for seven years prior to the application. In his capacity as agent, on a blank prepared for such purpose, he made a statement as to his knowledge of the fitness of deceased as an insurance risk, and the answer to these questions were all favorable to the insured.

The written application was taken by the agent R. M. McAllister, who had been employed by appellant in such capacity for some time. There was present, at the time the application was taken, deceased, appellee, and the agent, McAllister, who read from the blank form the questions asked and recorded the answers. When this was completed, deceased signed same at once, without either reading it or having it read in her presence, relying on the agent for a correct statement of her answers.

It is undisputed that in May, 1926, an operation for goiter was performed upon deceased, and that at such time she was confined in the hospital for some weeks. Appellee gives positive testimony to the effect that no question was asked deceased, at the time of the application, as to whether she had ever suffered from goiter; that the question as to whether she had consulted a physician, as read to deceased and answered by her, was whether she had consulted a physician in the last five years, and also as to whether she had undergone a surgical operation within the last five years, and also whether she had been under observation in a hospital within the last five years. McAllister, agent for appellant, testified that the questions were read as they appear in the application, and the answers made were in response to the written questions. The testimony further shows that the operation for goiter was a success; that she had been given the recognized test as to the success of such operation, at the recognized time for such a test,

subsequent to the operation, and she was pronounced entirely well.

The undisputed evidence shows that deceased died in childbirth, and that the immediate cause of her death was toxemia of pregnancy, though she had heart trouble at the time. The medical testimony of a competent physician, offered by appellee, is to the effect that the goiter, from which she had recovered more than five years previous to her death, was in no way a contributing cause to the disease from which she died. There is also medical testimony from appellant's medical director that, because of the poison in her system by reason of goiter, and the consequent strain on her heart during the time she suffered from such trouble, this could have been a contributing cause of her death.

Dr. Grigsby, appellant's medical director, who passes upon all written applications of the character made by deceased, testified that all such applications were placed before him for recommendation, and if rejected by him no policy would be issued; that if her application had stated that she had theretofore suffered from goiter and had been operated upon for such trouble, he would have at once rejected her application, for he considered such a person an undesirable risk for life insurance.

In its answer, appellant pleaded the fact that deceased was stricken with goiter in 1926 and had undergone an operation therefor; that such illness of the thyroid gland causing such operation was of a severe character, and that the facts in reference thereto were concealed from appellant; that the answers made in the written application formed the basis for the issuance of the insurance policy, and that if such answers had been truthful and recited the real facts in reference thereto, no insurance policy would have been issued; and it alleged that, because of such concealment of facts, the policy was void.

Appellee filed a supplemental petition, in which was alleged what is claimed to be "the true facts" in reference to the written application, as given above, and also alleged actual knowledge on the part of the agent, McAllister, as to the goiter operation, and as to the truth of the questions actually propounded to deceased, and which she truthfully answered, as propounded by the agent, and made these allegations the subject of a plea of estoppel on the part of appellant to rely upon the special defense pleaded. Appellant demurred to the allegations in the supplemental petition, which demurrer was overruled

by the court and error assigned on such ruling. The case was tried to a jury, submitted on special issues, and, in response to the verdict on such issues, the above-recited judgment was rendered. Appellant, at the close of the evidence, moved for peremptory instructions, which motion was overruled, and the ruling of the court on such motion is duly assigned as error. Appellant objected to the submission of each special issue and assigned error on the overruling on such objections.

We deem it pertinent to copy the special issues and the verdict on each issue. They are:

"No. 1. Do you find from a preponderance of the evidence that the question and the answer in the application of Mrs. Myrtle M. Thompson to The Praetorians for insurance to the effect that she had never had goiter, naturally influenced The Praetorians in determining whether to issue the policy sued on by the plaintiff? Answer 'yes' or 'no.' Answer: No.

"No. 2. Do you find from a preponderance of the evidence that the question and the answer in the application of Mrs. Myrtle M. Thompson to The Praetorians for insurance to the effect that she had never had a surgical operation, or been advised to have one, naturally influenced The Praetorians in determining whether to issue the policy sued on by the plaintiff? Answer 'yes' or 'no.' Answer: No.

"No. 3. Do you find from a preponderance of the evidence that the question and the answer in the application of Mrs. Myrtle M. Thompson to The Praetorians for insurance to the effect that she had not consulted a physician in the last ten years, naturally influenced The Praetorians in determining whether to issue the policy sued on by the plaintiff? Answer 'yes' or 'no.' Answer: No.

"No. 4. What sum of money do you find from a preponderance of the evidence will reasonably compensate the attorneys for the plaintiff for their services in this case? Answer in dollars and cents. Answer: Three Hundred Dollars."

At the request of appellee, the court gave the following special issues, and the same, with the verdict on each, are:

"Special Issue No. A: Do you find from a preponderance of the evidence that Mrs. Myrtle M. Thompson concealed or withheld from the defendant at the time the application was taken, knowledge of the fact that she had had surgical operation within ten years prior to the date of such application, in order to obtain the policy sued on? Answer 'yes' or 'no.' Answer: No.

"Special Issue No. B: Do you find from a preponderance of the evidence that Mrs. Myrtle M. Thompson concealed or withheld from the defendant at the time the application was taken, knowledge of the fact that she had had goiter, in order to obtain the policy sued on? Answer 'yes' or 'no.' Answer: No.

"Special Issue No. C: Do you find from a preponderance of the evidence that Mrs. Myrtle M. Thompson concealed or withheld from the defendant at the time the application was taken, knowledge of the fact that she had ever consulted a physician within ten years prior to the date of such application, in order to obtain the policy sued on? Answer 'yes' or 'no.' Answer: No.

"Special Issue No. D: Do you find from a preponderance of the evidence that R. M. McAllister knew, at the time the application was taken, that Mrs. Myrtle M. Thompson, had had a surgical operation within ten years prior to the date of such application? Answer 'yes' or 'no.' Answer: Yes.

"Special Issue No. E: Do you find from a preponderance of the evidence that R. M. McAllister knew at the time the application was taken that Mrs. Myrtle M. Thompson had had goiter? Answer 'yes' or 'no.' Answer: Yes.

"Special Issue No. F: Do you find from a preponderance of the evidence that R. M. McAllister knew at the time the application was taken, that Mrs. Myrtle M. Thompson had consulted a physician within ten years prior to the date of such application? Answer 'yes' or 'no.' Answer: Yes."

All of the answers to the above special issues are supported by substantial evidence, are binding on this court, and are adopted as the findings of this court on all matters of fact involved in such special issues. Subject to its motion for peremptory instruction, appellant made the following request as to the submission of special issues:

"The Praetorians, defendant in the above entitled and numbered cause, subject to its motion for a peremptory instruction heretofore filed, and after the introduction of the evidence and before the Court's charge is read to the jury, requests the Court to submit the cause to the jury upon the following issues raised by the pleadings and the evidence. T. W. Davidson, J. W. Randall, Attorneys for Defendant:

"No. 1. Do you find and believe from a preponderance of the evidence that the de-

fendant would not have issued the policy in question had it known that Mrs. Thompson had ever had a goiter?

"No. 2. Do you find and believe from a preponderance of the evidence that the defendant would not have issued the policy in question had it known that the insured, Mrs. Thompson, had consulted a physician within the ten years preceding the issuance of the policy?

"No. 3. Do you find and believe from a preponderance of the evidence that the defendant would not have issued the policy of insurance in question had it known that Mrs. Thompson, the insured, had had a surgical operation in the ten years prior to the signing of the application?

"No. 4. Do you find and believe from a preponderance of the evidence that the defendant would not have issued the certificate of insurance in question had it known that Mrs. Thompson, the insured, had been in a hospital or sanitarium during the ten years immediately prior to the signing of the application?

"No. 5. Do you find and believe from a preponderance of the evidence that the defendant would have made further investigation which would have led to the rejection of the application in question had it known that Mrs. Thompson, the insured, had ever had a goiter?

"No. 6. Do you find and believe from a preponderance of the evidence that the defendant would have made further investigation leading to the rejection of the application for insurance in question had it known that the insured, Mrs. Thompson, had consulted a physician within the ten years immediately prior to the signing of said application?

"No. 7. Do you find and believe from a preponderance of the evidence that the defendant would have made further investigation leading to the rejection of the application of Mrs. Thompson, the insured, had it known that she had been in a sanitarium or hospital within ten years immediately prior to the signing of the application?

"No. 8. Do you find and believe from a preponderance of the evidence that the defendant would have made further investigation leading to the rejection of the application of Mrs. Thompson, the insured, had it known that she had had a surgical operation within ten years immediately prior to the signing of said application?"

This request was refused by the court. It appears from the record herein that, after appellant's motion for peremptory instruction in its favor had been refused, appellant requested the court to submit the entire cause on the eight special issues embodied in the one instrument filed, and did not specially request the submission of any one of the eight issues embraced therein, disconnected from the other issues. However, appellant has separately assigned error on the refusal of the court to give each of the special requested issues.

The trial court submitted the case on the theory that, under the evidence, there was created an issue of fact as to whether the untrue answers were material to the risk assumed. Opposed to this is the theory of appellant that the misrepresentations—concerning previous medical attention, the suffering from the previous disease of goiter, and the undergoing of the surgical operation to remove same—are, as a matter of law, material to the risk and fatal to a recovery on the policy. These two opposing theories present the primary question to be decided in this case. The policy of insurance contains the provisions that "it is agreed by the insured holding this policy that the policy, the charter or articles of incorporation, the constitution and laws of The Praetorians, and the application therefor, and the medical examination signed by the applicant, with all amendments to each thereof, shall constitute the agreement between The Praetorians and the insured."

In the application, the deceased covenanted that: "I hereby agree * * * That every statement and answer hereinabove contained, I have made and that any untruth or concealment material to the contract shall make this policy wholly void and that this application shall be a part of the policy issued hereon."

It will be observed that deceased did not contract that every untruth or misrepresentation made in the application would void the policy, but did contract that "every untruth or concealment, material to the contract," would void the policy. Under the findings of the jury, supported by substantial evidence and adopted as the findings of this court, there was no concealment by the deceased of any of the matters about which complaint is made. These findings of the jury follow from their acceptance as true of the direct testimony of appellee that appellant's agent did not ask the question of deceased whether she had ever had goiter, and restricted the question as to an operation within the last five years, and also restricted the question as to consulting a physician to

the last five years. However, as the application came to appellant, it did contain a negative answer as to goiter, and did contain the statement that she had never undergone a surgical operation, and that she had not consulted a physician within the last ten years. These statements, as presented to appellant by the application, were untrue. If they are material to the risk, then, under the terms of the application, the policy is void, unless appellant be estopped, because of the knowledge of its agent and the fraud practiced upon deceased in writing her answers in the application, to assert such defense.

The meaning of the term "material to the risk" becomes a very important inquiry. Fortunately, we are not without judicial interpretation of such term in this state. In Supreme Ruling of Fraternal Mystic Circle v. Hansen (Tex. Civ. App.) 153 S. W. 351, 352, 353, such term is defined to be "any fact concerning the health, condition, or physical history of the applicant, which would naturally have influenced the insurance association in determining whether or not it would issue the certificate"; also, in the case of Modern Brotherhood of America v. Jordan (Tex. Civ. App.) 167 S. W. 794, 796, the term is defined as meaning "any previous affection which might reasonably have been considered a menace to the prolongation of the life of the insured, and that, had it been revealed, the application would have been rejected. United Benevolent Ass'n v. Baker [Tex. Civ. App.] 141 S. W. [541] 543."

Giving due regard to these definitions of said term, does the evidence raise an issue in this case as to whether the misstatements of the deceased, made in her application, were material to the risk assumed? This evidence is to the effect that, some five years and eight months previous to the application, the deceased had undergone a successful operation for goiter, and not only had fully recovered from such operation, but had a robust appearance as to health. It is also in evidence that, after the operation had been performed, and at a time when the result of the operation could be determined, she was given by the surgeon the recognized medical test and, as a result of such test, was pronounced cured; that appellant's agent, who took the application, had known her for seven years, knew of her operation for goiter, and its result, certified on the blank furnished him for confidential information that he did not know of any past illness, bodily affliction, or injury that might affect the risk; that the physician who attended deceased during the period of her pregnancy stated that she died from toxemia of pregnancy complicated by heart disease, and that there was no special cause, proximate or remote, for the death, "in the habits, occupation, family history, personal constitution, or previous disease of the deceased." There is medical testimony, independent of the attending physician's testimony, to the effect that the goiter and the operation therefor had no connection whatever with deceased's death. Dr. Grigsby, appellant's medical director, testified that, if the application, when presented to him, had shown that deceased had been operated upon for goiter, he would have rejected same. There is nothing in the policy or the said application specifically stating that one who had suffered from goiter would be rejected, regardless of whether such had been cured or not. We are of the opinion that the evidence raised the issues of fact submitted by the court, and hence hold that the trial court did not err in overruling the motion to grant an instructed verdict, and did not err in entering judgment for appellee on the findings of the jury.

The above holding is based upon appellant's claim that it is a fraternal benefit society and is governed by, and has all of the rights and privileges of, such society, as contained in chapter 8 of title 78, R. S. Article 4834 of such chapter provides that: "The constitution and laws of the society, and the application for membership and medical examination, signed by the applicant, and all amendments to each thereof, shall constitute the agreement between the society and the member."

Appellant did not plead that it was a fraternal benefit society, nor did it prove same. Article 4820, R. S., amended by acts 1931, c. 48, § 1 (Vernon's Ann. Civ. St. art. 4820), defines what is necessary to constitute such an association. The matters so stated are susceptible to proof and, in order to claim the benefits under said chapter 8, title 78, R. S., the burden rested upon appellant to show that it was such an association. This burden was not discharged, and, in the absence of such showing in the record, appellant is governed by the same statutes that govern other life insurance companies. Grand Lodge of Order of Sons of Hermann in State of Texas v. Prater et al. (Tex. Civ. App.) 2 S.W. (2d) 500; American Ins. Union v. Wylie (Tex. Civ. App.) 23 S.W.(2d) 491; First Texas Prudential Ins. Co. v. Smith (Tex. Civ. App.) 60 S.W.(2d) 541.

Article 5043 of chapter 21, title 78, R. S., provides, in effect, that any misrepresentation

made by a policyholder in his application for insurance shall not constitute any defense to any suit brought upon such contract, "unless it be shown upon the trial thereof that the matter or thing misrepresented was material to the risk or actually contributed to the contingency or event on which said policy became due and payable, and whether it was material and so contributed in any case shall be a question of fact to be determined by the court or jury trying such case."

If the application constitutes a part of the insurance contract, then this statute will apply and the trial court followed its mandate and submitted the question to the jury. Again, article 5050, R. S., provides that: "Every policy of insurance issued or delivered within this State by any life insurance company doing business within this State shall contain the entire contract between the parties, and the application therefor may be made a part thereof." The undisputed evidence in this case shows that the application was not attached to the policy, and hence, under this statute, it did not become a part of the insurance contract, and of course there could be no error in the court submitting the issues as to whether the misrepresentations were material to the risk. First Texas Prudential Ins. Co. v. Smith, supra.

Error is assigned because of the failure of the court to submit special issues Nos. 4 and 7, contained in appellant's request that the case be submitted on the eight special issues. This record does not show that special issues Nos. 4 and 7 were specially requested to be submitted, other than with the other issues in question. Assignments of error in this respect are overruled.

Error is assigned on the argument of counsel for appellee to the effect that agent McAllister knew that deceased had been in the hospital, knew that deceased had had goiter, and that he (McAllister) constitutes The Praetorians as much as Dr. Grigsby, the medical director. Objection was made to this argument at the time, and the court instructed the jury to disregard it. This cured whatever error may have been committed in the argument.

As this case must be affirmed on the grounds above discussed, we do not find it necessary to pass upon the question of estoppel, raised by appellee and presented as an additional reason why the judgment should be affirmed. We pass this question without expression of an opinion thereon.

It necessarily follows from what we have said that, in our opinion, this case should be affirmed, and it is so ordered.

Affirmed.